**ILLINOIS UNION INSURANCE COMPANY, Plaintiff,**

v.

**TRI CORE INC., Ronnie G. Redfearn, EPIC Welfare Benefit Plan and Trust, Steven Shapiro, Esq., Alloy Cast Products, Inc., Kenneth Fisher, Fran Panico, Inc, Finderne Management Company, Inc., Rocque Dameo, Daniel Dameo, National Security Systems, Inc., Steven Capello, Universal Mailing Service, Inc., Defendants.**

No. 3:01–CV–1913–M.

United States District Court, N.D. Texas, Dallas Division.

Feb. 1, 2002.

Karen B. Bragman, Henry R. Chalmers, Arnall Golden & Gregory, Atlanta, GA, Gordon K. Wright, Cooper & Scully, Dallas, TX, Matthew B. Wieliczko, Zeller & Bryant, Cherry Hill, NJ, for Plaintiff.

Robert S. Addison, Payne & Blanchard, Dallas, TX, Ellen Nunno Corbo, Taylor & Colicchio, Princeton, NJ, Steven J. Fram, Archer & Greiner, Haddonfield, NJ, for Defendants.

### MEMORANDUM ORDER AND OPINION

LYNN, District Judge.

Before the Court are the Plaintiff's Motion to Retransfer this case to the District of New Jersey, where, on July 2, 2001, it was transferred to the Northern District of Texas by the Honorable Anne E. Thompson, and certain Defendants' Motion to Sever and Motion to Reconsider their Motion to Dismiss.

### BACKGROUND

This case involves a first party insurance dispute and arises from the filing of several third party suits originating from the allegedly poor administration of welfare benefits. The part of the dispute currently before the Court involves a request, made through the Complaint filed in the District of New Jersey on March 2, 2001, by Plaintiff Illinois Union Insurance Co. ("IUIC") to rescind an Insurance Agents and Insurance Brokers Liability Insurance Claims Made Policy issued to Defendant Tri Core, and to declare that there is no coverage for underlying individual lawsuits based on the fraud exclusion under the policy.[1] IUIC claims that the Defendants Ronnie G. Redfearn ("Redfearn") and Tri Core Inc. ("Tri Core") fraudulently failed

---

1. Three lawsuits, two filed in New Jersey state court and one in New Jersey federal court, serve as the basis for the Tri Core Defendants' contention that IUIC owes them a duty to defend and duty to indemnify. On February 25, 1999, *Alloy Cast Products, Inc., Kenneth Fisher, and Frank Panico v. James W. Barrett, Barrett and Barrett Assoc., CIGNA Fin. Advis-*

to disclose, in their applications for coverage, that their involvement with the Defendant EPIC Welfare Benefit Plan and Trust (the "EPIC Plan"), created by Tri Core, would lead to liability claims against the insured. Specifically, IUIC claims that on two separate applications, one sent to IUIC on December 4, 1998 and another sent to IUIC on December 28, 1998, Tri Core and Redfearn failed to disclose that the IRS had determined that the insurance product they were selling was not entitled to the tax benefits they were representing it had. Fifty three days after IUIC filed its Complaint, Redfearn, the EPIC Plan, and Tri Core (together the "Tri Core De-

fendants") filed a separate action in Texas state court against IUIC.[2] They thereafter moved to dismiss, or, in the alternative, transfer the federal action to Texas. The District of New Jersey denied the Tri Core Defendants' motion to dismiss, but granted their motion to transfer. IUIC now moves the Court to retransfer the case to the District of New Jersey, claiming the transferor court was without authority to order the transfer. The Tri Core Defendants oppose the retransfer but, in the event the Court is disposed to grant the retransfer, seek a severance of certain claims and a reconsideration of the transferor court's denial of their motion to dismiss.[3]

ors Inc., Tri Core Inc., Ronald Redfearn, EPIC Welfare Benefit Plan and Trust, and Steven Shapiro, Esq., was filed in New Jersey state court (the "ACP action"). The suit alleged that the defendants made false and misleading misrepresentations and induced the plaintiffs to enter into the EPIC plan. On June 4, 1999, Finderne Mgmt. Co., Inc., Roque Dameo and Daniel Dameo v. James W. Barrett, Gerald T. Papetti, CIGNA Fin. Advisors Inc., U.S. Fin. Serv. Corp., Tri Core Inc., Ronald Redfearn and EPIC Welfare Benefit Plan and Trust, was filed in New Jersey state court (the "Finderne action"). The Finderne action alleged that the defendants' false and misleading misrepresentations induced the plaintiffs to enter into the EPIC Plan, which resulted in a loss of benefits and severe adverse federal tax consequences. On December 29, 2000, National Security Systems, Inc. Steven Capello, Universal Mailing Serv., Inc., Michael Maroney, Sr., Lima Plastics, Inc., Joseph M. Caria, Margit Gyantor, Finderne Mgmt. Co., Inc., Rocque Dameo, Daniel Dameo, Alloy Cast Products, Inc., Kenneth Fisther, and Frank Panico v. Robert L. Iola, Jr., James W. Barrett, Gerard Papetti, CIGNA Financial Serv., Inc., Lincoln National Life Ins. Co., U.S. Financial Serv. Corp., Ronn Redfearn, Tri Core, Inc., Commonwealth Life Ins. Co., Monumental Life Ins. Co., Peoples Security Life Ins. Co., Raymond J. Ankner, Beaven Co., Inc., CJA Assoc., Inc., Nations-Bank Texas Trust, and Riggs National Bank, was filed in the United States District Court for the District of New Jersey (the New Jersey "federal action"). The federal action, which is currently pending before Judge Thompson,

alleged that the defendants knowingly and intentionally misrepresented and omitted material facts regarding their background and qualifications, the structure and operation of the EPIC Plan, and the nature of the defendants' compensation. In all instances, IUIC disclaimed coverage on claims reported by Tri Core and Redfearn and thereafter filed this action seeking rescission of the policy and a declaration of its duties to Tri Core, Redfearn, and the EPIC Plan, with regard to the underlying lawsuits. IUIC claims the two state court actions were dismissed in deference to the federal action. The Tri Core Defendants agree that the state court cases were dismissed and note that Judge Thompson recently denied the Tri Core Defendants' motion to dismiss the federal action, in an opinion the "import" of which "is that if the state court judges are upheld on appeal, Judge Thompson will then dismiss [p]laintiffs' claims in federal court."

**2.** IUIC has filed a Plea in Abatement in the state court action. In their Response to the Motion to Retransfer, the Tri Core Defendants represent that the state judge continued the hearing on IUIC's Plea in Abatement pending a ruling from this Court on the Motion to Retransfer.

**3.** IUIC admits that the normal procedure would be to request that the transferor court reconsider its transfer. However, in this instance, the transferor court had already physically transferred the docket to this Court be-

## ANALYSIS

### A. Motion to Retransfer

On April 24, 2001, the Tri Core Defendants filed suit in Texas state court seeking a declaration of coverage under an IUIC insurance policy. Alloy Cast Products, Inc., Kenneth Fisher, Fran Panico, Finderne Management Co., Inc., Rocque Dameo, Daniel Dameo, National Security Systems, Inc., Steven Capello, and Universal Mailing Service, Inc. (together the "New Jersey Defendants"), were not made parties to the Tri Core Defendants' Texas suit but are defendants in this suit. They are plaintiffs in the New Jersey federal action and were plaintiffs in the dismissed New Jersey state court actions. Prior to transfer, IUIC joined them in this case "to bind them to this Court's determination, and thereby, cut off any claims they may have to the insurance proceeds."[4] Personal jurisdiction over the New Jersey Defendants is central to IUIC's contention that the transfer of this case to the Northern District of Texas was improper. IUIC claims the New Jersey Defendants are not subject to personal jurisdiction in Texas.

### 1. Personal Jurisdiction over all the Defendants

Motions to transfer venue are governed by 28 U.S.C. § 1404(a).[5] Section 1404 imposes a two-part test. First, the transferee district must be one where the case could have been originally brought, and second, the transfer must be in the interest of justice and serve the convenience of the parties and witnesses.[6] A court may not transfer a case unless the plaintiff could have sued *all* of the defendants in the transferee court:

> [A] transfer is authorized by [28 U.S.C. § 1404(a) ] only if the plaintiff had an 'unqualified right' to bring the action in the transferee forum at the time of the commencement of the action; i.e., venue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over all of the defendants.[7]

The Tri Core Defendants bear the burden of affirmatively demonstrating that each defendant would have been subject to personal jurisdiction in the transferee court.[8]

The District of New Jersey, in a Memorandum and Order, found that "the moving parties ha[d] met their burden of persuasion" of showing that "the Northern Dis-

---

fore IUIC learned of the ruling. *See Hoffman v. Blaski*, 363 U.S. 335, 336–339, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960) (ordering two trial courts to re-transfer cases improperly transferred to them). *See also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, 15 FEDERAL PRACTICE AND PROCEDURE § 3846 (2d ed. 1987 & Supp.2001) ("[w]hen a motion for transfer [] has been granted, and the papers lodged with the clerk of the transferee court, the transferor court—and the appellate court that has jurisdiction over it—lose all jurisdiction over the case and may not proceed further with regard to it").

**4.** Pl's Resp. to Tri Core's Mot. at 4. IUIC claims this is "standard practice."

**5.** 28 U.S.C. § 1404(a) reads:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

**6.** *Sunbelt Corp. v. Noble, Denton & Assoc., Inc.*, 5 F.3d 28, 31–33 (3d Cir.1993); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir.), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971).

**7.** *Shutte*, 431 F.2d at 24.

**8.** *See Sunbelt Corp.*, 5 F.3d at 31 (finding the transfer to Texas was improper because the movant failed to demonstrate that each of the defendants would have been subject to personal jurisdiction in Texas).

trict of Texas, is one in which the original action could have been brought." In so ruling, it relied on the Tri Core Defendants' assertion, in their *Brief in Support of a Transfer,* that the first "part of the test is certainly met in the instant action, since the case not only 'might have been brought' in the proposed transferee district, Texas, but has, in effect, actually been brought in that district in the parallel proceeding filed by the insured defendant against the [p]laintiff in Texas state court," and their assertion, in their *Reply,* that the Texas case is "the same case between the same parties, so the matter not only could have been brought in Texas, it has been brought in Texas." These were apparently the only contentions related to original jurisdiction supplied to the District Court of New Jersey. In actuality, the Texas state court proceeding does not include the New Jersey Defendants. Not only did the Tri Core Defendants not even attempt to meet their burden of proving this case could have been brought in the Northern District of Texas against *all* of the Defendants, they also represented that the Texas state court suit involved all the Defendants to this suit, which it does not.

Although the burden is on the Tri Core Defendants to demonstrate that the suit could have been originally brought in Texas, IUIC supplies sworn verifications from two of the New Jersey Defendants, Frank Panico and Rocque Dameo, who represent they have no contacts with Texas.

■■■■ IUIC argues that under Supreme Court precedent, *Hoffman v. Blaski,*[9] this Court "must" retransfer the case. In *Hoffman,* the Northern District of Texas transferred the case to the Northern

District of Illinois pursuant to 28 U.S.C. § 1404. After the Northern District of Texas denied the non-movants' motion to reconsider the transfer, they sought, but were denied, a writ of mandamus from the Fifth Circuit. Thereafter, Judge Hoffman, of the Northern District of Illinois, expressed the view that the "weight of reason and logic" favored "retransfer of this case to Texas" because the action could not have been originally brought in Illinois, but, nevertheless, he denied the non-movants' motion to retransfer, emphasizing the notion of comity to the Texas court's decision. The Seventh Circuit, in a mandamus proceeding, reversed, finding the action could not have been originally brought in Texas, and the Supreme Court affirmed the decision. The language of the Supreme Court seems clear:

> The thesis urged by [the movants] would not only do violence to the plain words of s. 1404(a), but would also inject gross discrimination. That thesis, if adopted, would empower a District Court, upon a finding of convenience, to transfer an action to any district desired by the defendants and in which they were willing to waive their statutory defenses as to venue and jurisdiction over their persons, regardless of the fact that such transferee district was not one in which the action 'might have been brought' by the plaintiff.[10]

The Third Circuit, from which this case was transferred, champions the ideal of comity and emphasizes the inefficiency of shuttling a case back and forth between fora in what Justice Frankfurter, in his dissent in *Hoffman,* referred to as promoting "judicial unseemliness."[11] The Third Circuit, in *Hayman Cash Register Co. v. Sarokin,*[12] applied the "law of the case" doctrine to a transfer situation.[13] There, it

---

**9.** 363 U.S. at 340 n. 9, 80 S.Ct. 1084.

**10.** *Id.* at 344, 80 S.Ct. 1084.

**11.** *See Hoffman,* 363 U.S. at 346–49, 80 S.Ct. 1084 (Frankfurter, J., dissenting).

**12.** 669 F.2d 162, 169–70 (3d Cir.1982).

**13.** This doctrine is not confined to the transfer arena. It provides that "a decision of a factual or legal issue by an appellate court establishes the 'law of the case' and must be

held that the transferee court in a 28 U.S.C. § 1406 case was prohibited from ruling that venue did not properly lie in the transferee district when the transferor district court had already determined that venue did lie in the transferee district. In *Hayman*, the transferor court had weighed several factors and found that the case could have been brought in the transferee forum. The court distinguished *Hoffman* on its facts by finding that the transferor court in *Hoffman* did not explicitly address the venue or personal jurisdiction question because a waiver was found. Despite its apparent broad approval of the "law of the case" doctrine in the transfer setting, the Third Circuit, in *Hayman*, announced several exceptions to the doctrine:

> [T]his court has recently held that a successor judge may entertain a timely motion to reconsider the conclusions of an unavailable predecessor, because otherwise the right to move for reconsideration would be effectively denied .... Another exception exists if new evidence is available to the second judge when hearing the issue. In this situation, 'the question has not really been decided earlier and is posed for the first time; the second judge ought, therefore, to be free to render a decision' .... A third exception to the law of the case doctrine

is that every court 'had a duty to apply a supervening rule of law despite its prior decisions to the contrary when the new legal rule is valid and applicable to the issues of the case.' [14]

■ Post-*Hayman* Supreme Court case law further addresses the "law of the case" doctrine in a somewhat analogous situation. The District Court of Illinois granted the defendants' motion for summary judgment in *Christianson v. Colt Ind. Operating Corp.*[15] The plaintiffs thereafter appealed to the Federal Circuit, which concluded that it lacked jurisdiction, and transferred the case to the Seventh Circuit. The Seventh Circuit retransferred the case to the Federal Circuit, which ruled on the merits of the appeal, albeit reluctantly. The Supreme Court reversed, finding the Federal Circuit was not obliged to adopt the Seventh Circuit's analysis of the jurisdictional issue as the law of the case:

> The age-old rule that a court may not in any case, even in the interest of justice, extend its jurisdiction where none exists has always worked injustice in particular cases .... That does not mean, however, that every borderline case must inevitably culminate in a perpetual game of jurisdictional ping-pong until this Court intervenes to resolve the underlying jur-

---

followed in all subsequent proceedings in the same case in the trial court or on a later appeal in the appellate court ...." *Goodpasture, Inc. v. M/V Pollux*, 688 F.2d 1003, 1005 (5th Cir.1982) (quoting *White v. Murtha*, 377 F.2d 428, 431–32 (5th Cir.1967)). The rule is "based on the salutary and sound public policy that litigation should come to an end." *White*, 377 F.2d at 433. Though the doctrine does not limit the power of trial judges from reconsidering issues previously decided by a predecessor judge from the same court or from a court of coordinate jurisdiction, it does recognize that as a matter of comity a successor judge should not lightly overturn decisions of her predecessors in a given case. *Hayman*, 669 F.2d at 165.

**14.** *Hayman*, 669 F.2d at 169–70 (internal citations omitted). The Supreme Court has also approved of a fourth exception to the "law of the case" doctrine where "the decision was clearly erroneous and would work a manifest injustice." *See Arizona v. California*, 460 U.S. 605, 103 S.Ct. 1382, 75 L.Ed.2d 318 (1983). In addition to the above situations, *Hayman* recognized an overarching exception: "[a] judge need not follow a previous decision on the same issue in the same case if 'unusual circumstances' exist that permit a different conclusion." 669 F.2d at 169 (quoting *Evans v. Buchanan*, 555 F.2d 373, 378 (3d Cir. 1977)).

**15.** 486 U.S. 800, 803, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988).

isdictional dispute, or (more likely) until one of the parties surrenders to futility .... Under the law-of-the-case principles, if the transferee court can find the transfer decision *plausible*, its jurisdictional inquiry is at an end .... While *adherence to the law of the case will not shield an incorrect jurisdictional decision* should this Court choose to grant review, it will obviate the necessity for us to resolve every marginal jurisdictional dispute.[16]

*Christianson* limited *Hoffman's* reach and undermines IUIC's assertion that the Court "must" retransfer the case. *Christianson* plainly professed that a transferee court should be "loathe" to upset a transferor court's determination if the decision is "plausible." However, the Court did not extend comity so far that a coordinate court could insulate an issue from review in all circumstances. In the case before it, the Supreme Court determined that the transferee Federal Circuit should not have considered the merits of the action, but rather should have returned the case to the Seventh Circuit. It thus remanded the case to the Federal Circuit with instructions to transfer the case to the Court of Appeals for the Seventh Circuit.[17]

This Court is loathe to upset the determination of the District of New Jersey that this case could have been brought in Texas, but notes that the Tri Core Defendants have not demonstrated to either this Court or the District Court of New Jersey that this Court has personal jurisdiction over *all* defendants. In fact, this Court believes the Tri Core Defendants misled the transferor court into believing that the Texas state court action and this action involved identical parties. Sworn verifications of two New Jersey Defendants, evidence that was *not* before the transferor court, expose the absence of jurisdiction. This situation thus falls within at least one stated exception articulated in *Hayman* because the case was transferred before a motion to reconsider could be entertained by the District of New Jersey and new evidence is available to this Court that was not made available to the transferring court.

## 2. Personal and Private Interest Factors

Even if the personal jurisdiction issue were not dispositive, IUIC contends that a balancing of private and public factors instructs against the transfer.[18] IUIC argues that it must prove that Tri Core and Redfearn knew, at the time they completed their insurance application, that Tri Core's professional services could result in a claim being made against them, but fraudulently failed to disclose this information on their applications. To prove this, through the testimony of several of the New Jersey Defendants, IUIC intends to adduce evidence of Tri Core's knowledge of impending claims. IUIC alleges the New Jersey Defendants are crucial witnesses who cannot be compelled to appear in person if the action is in Texas.[19] Fur-

**16.** *Id.* at 819, 108 S.Ct. 2166 (emphasis added).

**17.** *Id.*

**18.** In order to determine whether to transfer venue, a court should consider the "private interests" of the parties: plaintiff's choice of forum, ease of access to sources of proof, availability of compulsory process over unwilling witnesses, and obstacles to a fair trial. 28 U.S.C. § 1404. *See also Gulf Oil Corp. v.*

*Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 91 L.Ed. 1055 (1947). A court should also consider the "public interests" that might make a trial expeditious and inexpensive, by evaluating court congestion and other administrative difficulties, the local interest in having cases adjudicated at home, and the familiarity of the forum court with the applicable law. *Id.*

**19.** IUIC cites *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 511, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), for the proposition that "to fix the

ther, IUIC argues that claims of prejudice and inconvenience cannot fairly be asserted by the Tri Core Defendants, since they are defendants in the current New Jersey federal action, they marketed and sold numerous policies to New Jersey residents, and they now service active clients only in New Jersey.[20] IUIC also argues that judicial economy will be disserved through the transfer because the federal action, where the New Jersey Defendants and the Tri Core Defendants are already involved in litigation, is currently before the transferor court. "By retaining jurisdiction, the [District of New Jersey] can also ensure that the two cases do not produce inconsistent results, which will serve the interests of justice." Finally, IUIC argues that while Tri Core is a Texas corporation, its sole office is in Washington, D.C. and its sole shareholder and owner, Redfearn, has his principal residence in Washington, D.C.[21]

The District of New Jersey weighed heavily the applicability of Texas law and the state of Tri Core's incorporation. In its discretion, it found any inconvenience or prejudice to IUIC insufficient to justify retention of the suit. This Court gives great weight to this exercise of discretion and would not disturb it.

**B. Motion to Sever**

■ The Tri Core Defendants' Motion to Sever is curious. They first argue that

"[t]he New Jersey Defendants are not necessary or even proper parties to the rescission action, which involves a Texas insurance policy, issued to a Texas corporation, controlled by Texas law." They then contend that the rescission claim and the declaratory judgment claim pertaining to the duty to defend issue should be severed, so that the duty to defend portion of the case, not involving the New Jersey Defendants, can proceed in this Court.

The Court finds it is without jurisdiction to entertain either the severance or the dismissal motions brought by the Tri Core Defendants. In *Ferri v. United Aircraft Corp.*,[22] the District of Connecticut found the transfer from the Southern District of Florida improper because all the defendants to the action were not subject to venue and jurisdiction in the District of Connecticut. One defendant moved to sever certain claims against another defendant who was subject to jurisdiction in the transferee district. Denying the motion, the court found the severance issue was not within its discretion:

Defendants understandably argue that if [the transferor court] in all likelihood intends such a result, it would be simpler for this Court to accomplish it directly by severing the claims ... now, instead of returning the case so that [the transferor court] can order the severance. The distinction between the two

place of trial at a point where litigants cannot compel personal attendance and may be forced to try their cases on deposition, is to create a condition not satisfactory."

20. *See* Redfearn Depo. at 225.

21. *See* Redfearn Depo. at 7. Redfearn testified that Tri Core had not had an office in Dallas since 1992 and that its sole office was in Washington, D.C. *See* Redfearn Depo. at 7, App. 94–95. The evidence on this point is inconsistent. The insurance application, made in 1998, states that Tri Core's address is

at 14232 Marsh Lane, Suite 353, Dallas, TX 75234. The EPIC Plan's summary plan description represents that the Plan Adminstrator's address is Tri Core, Inc. at 1753 P Street, N.W., Washington, D.C. 20036, and the Trustee is NationsBank, 901 Main Street, 16th Floor, Dallas, Texas 75202. In the Tri Core Defendants' promotional materials, attached to IUIC's Complaint, there is also a Tri Core address at 5420 LBJ Freeway, 1225 Two Lincoln Centre, Dallas, Texas 75240.

22. 357 F.Supp. 814, 817–18 (D.Conn.1973).

courses is technical, but that is the nature of jurisdictional issues. The plain fact is that this Court lacks jurisdiction over the action and therefore is without power to sever the claims [ ]. The only court that can order severance is a court with jurisdiction over the entire action ... Even if the return for severance by [the transferor court] is not absolutely required, it seems preferable to avoid even the risk of a jurisdictional defect before beginning in this district a complex and obviously time-consuming piece of litigation.[23]

Any motion for severance, dismissal or motion to reconsider dismissal is properly reserved for the District of New Jersey. This Court cannot and will not invade the province of that court to make rulings regarding the composition and administration of its case.

## CONCLUSION

The Tri Core Defendants have not demonstrated that the New Jersey Defendants are subject to personal jurisdiction in Texas. The facts of this case, including the misleading assertions on which the Tri Core Defendants successfully urged transfer to this Court, justify a retransfer due to an apparent lack of jurisdiction in this Court over all defendants.

**SO ORDERED.**

---

**23.** *Id.* at 818. *See also Camasso v. Dorado Beach Hotel Corp.*, 689 F.Supp. 384, 388 (D.Del.1988) (refusing to sever where the aim of the motion to sever was to evade the jurisdictional requirements of the Supreme Court and § 1404).