**Charles William GREENER, Appellant,**

v.

**The CADLE COMPANY, Appellee.**

**No. CIV.A.3:01–CV–2051–L.**

United States District Court,
N.D. Texas,
Dallas Division.

July 25, 2003.

and the applicable law, the court finds no reversible error. Accordingly, the judgment of the bankruptcy court is **affirmed.**

## I. *Background*

This appeal relates to an underlying bankruptcy proceeding wherein The Cadle Company ("Cadle" or "Appellee"), as the purported creditor of Charles William Greener ("Greener"), filed an adversary claim against Greener based on a state court judgment it had acquired from Premier Financial Services–Texas, L.P. ("Premier"), which acquired the judgment and other assets of failed lending institutions from Resolution Trust Corporation ("RTC") via a series of transactions, which are the subject of the this appeal.

On June 21, 1991, RTC, as conservator for federally insured Commonwealth Federal Savings Association ("Commonwealth"), filed a petition in state court against Greener to collect on two guarantees, thereby commencing the matter of *Resolution Trust Corporation as Conservator for Commonwealth Saving Association v. Charles W. Greener,* Civil Action No. 91–26792, in the 295th Judicial District Court of Harris County, Texas. That same day, RTC was appointed the receiver for Commonwealth and took possession of its assets. On August 9, 1991, an agreed judgment was entered in favor of RTC, as conservator for Commonwealth, for the guarantee amounts of $1,277,651.12 and $276,015.59, plus interest.

On December 30, 1993, Premier and RTC, as an instrumentality of the United States, entered into a Contribution Agreement ("Contribution Agreement"). Attached to the Contribution Agreement is a document entitled "JCD INITIATIVE TRANSFER, TEXAS PARTNERSHIP H6" ("H6 attachment"). The H6 attachment is dated December 30, 1993 and lists judgments, chargeoffs, deficiencies

Weldon L. Moore, III, L. E. Creel, III, Creele, Sussman & Moore, Dallas, TX, John B. Atwood, III, Law Office of John Atwwod, III, Dallas, TX, for Appellant.

F. Dean Armstrong, Law Office of F. Dean Armstrong, Flossmoor, IL, for Appellee.

## MEMORANDUM OPINION AND ORDER

LINDSAY, District Judge.

Appellant Charles William Greener ("Greener" or "Appellant") appeals the bankruptcy court's Memorandum Opinion on Standing of Plaintiff and Judgment on Standing of Plaintiff, entered on September 27, 2001. After careful consideration of the parties' briefs, the record on appeal,

("JCD"), and other assets from various savings and loan associations, one of which is Commonwealth Federal Savings Association for a total amount of $8,313,113.09. On the same date, Premier and RTC entered into an Agreement of Limited Partnership ("Partnership Agreement") with Premier as the general partner and RTC as a limited partner. The Partnership Agreement is referenced in the parties' Contribution Agreement and sets forth the respective obligations of Premier and RTC and the terms of the partnership.

On May 19, 1994, RTC assigned or transferred to Premier its interest in the state court judgment against Greener in a document entitled "Assignment and Bill of Sale" ("RTC–Premier Assignment"). This document assigns various "JDC and Small–Balance Assets (as such terms are defined in the Contribution Agreement) listed on *Exhibit A* attached hereto (the 'Assets')." Attached to the RTC–Premier Assignment is a spreadsheet dated June 6, 1994. The heading on the spreadsheet is:

JCD Initiative—Transfer of Assets

Dallas Region—Pool DAL–03

Listed on the attachment are the names of individuals and corresponding account numbers and balance amounts. Included on this list of transferred balances are two entries under Greener's name for the amounts of $1,277,651.12 and $276,015.59.

On March 12, 1999, Premier assigned its interest in the state court judgment against Greener to Cadle ("Premier–Cadle Assignment"). This assignment was to be effective as of October 5, 1998. On August 4, 1999, the Federal Deposit Insurance Corporation ("FDIC"), which was RTC's successor in interest to the state court judgment, assigned or transferred its interest in the judgment to Premier in an "Assignment of Agreed Final Judgment" ("FDIC–Premier Assignment").

On September 14, 1999, Greener filed a Chapter 7 bankruptcy petition in the Northern District of Texas, Dallas Division. On October 18, 1999, Cadle filed a proof of claim against Greener, seeking to recover on the state court judgment. Attached to its proof of claim was the state court judgment, FDIC–Premier Assignment, and Premier–Cadle Assignment. On February 20, 2001, Greener moved for summary judgment, on the grounds that Cadle was not his creditor, and thus did not have standing to pursue an adversary claim against him. After a hearing on March 13, 2001, the bankruptcy court denied Greener's motion for summary judgment by order dated April 26, 2001. Greener appealed the bankruptcy court's ruling, but before this court could rule on the motion, the bankruptcy court bifurcated the underlying bankruptcy action, so that it could resolve the issue of standing before it tried the merits of the adversary claim. After a hearing, the bankruptcy court, in its September 27, 2001 Memorandum and Opinion of Standing on Plaintiff, determined that Cadle had standing to bring its adversary claim against Greener and entered a judgment to that effect on the same date. On October 9, 2001, Greener appealed the bankruptcy court's judgment, thereby mooting his previous request for interlocutory review of the standing issue. Accordingly, the present appeal is from the bankruptcy court's final adjudication of the standing issue entered on September 27, 2001.

## II. *Standard of Review*

In a bankruptcy appeal, district courts review bankruptcy court rulings and decisions under the same standards employed by federal courts of appeal; "conclusions of law are reviewed de novo, findings of fact are reviewed for clear error, and mixed questions of fact and law are reviewed de novo." *In re National*

*Gypsum Co.,* 208 F.3d 498, 504 (5th Cir.), *cert. denied,* 531 U.S. 871, 121 S.Ct. 172, 148 L.Ed.2d 117 (2000); *In re Bass,* 171 F.3d 1016, 1021 (5th Cir.1999) ("Mixed questions of fact and law, and questions concerning the application of law to the facts, are reviewed de novo."). A bankruptcy court's "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." Fed. R. Bankr.P. 8013. A finding is clearly erroneous and reversible only if, based on the entire evidence, the reviewing court is left "with the definite and firm conviction that a mistake has been made." *Id.; Matter of Allison,* 960 F.2d 481, 483 (5th Cir.1992). In conducting this review, the court is "particularly mindful of 'the opportunity of the bankruptcy judge to determine the credibility of the witnesses.'" *Matter of Young,* 995 F.2d 547, 548 (5th Cir.1993) (quoting Rule 8013).

## III. *Analysis*

Greener raises three arguments to support his contention that the bankruptcy court erred in concluding that Cadle has standing to pursue its claim against him as a creditor in the bankruptcy proceeding. The following summarizes his arguments: (1) the state court judgment is void and cannot form the basis of Cadle's claim; (2) the Contribution Agreement, Partnership Agreement, and RTC–Premier Assignment were erroneously admitted into evidence, and, without these documents. Cadle has no claim; and (3) the law of the case doctrine requires that the bankruptcy court's summary judgment ruling that the RTC–Premier Assignment failed to satisfy the best evidence rule is binding on the bankruptcy court, and the bankruptcy court therefore erred in later determining, after a hearing on the matter, that the document was admissible. Greener argues that without this document, Cadle cannot prove its claim, because without proof of

transfer of the state court judgment from RTC to Premier, there can be no transfer from Premier to Cadle.

## A. Standing or Capacity to Sue

█ Greener contends that the state court judgment upon which Cadle relies is void and cannot form the basis of its claim against him. Specifically, Greener argues that the state court lacked subject matter jurisdiction over the matter, because RTC, in its capacity as conservator, initiated the suit in state court; however, within hours of filing a petition, all of RTC's assets, including its claims against Greener, were transferred to RTC, in its capacity as receiver, and RTC, in its capacity as conservator, ceased to exist at that point as a legal entity. Greener thus contends that the failure of RTC, in its capacity as receiver, to intervene or amend the state court petition to add the correct legal name of the plaintiff caused the state court to lose subject matter jurisdiction. As a result, Greener contends that the judgment entered by the state court is void, and Cadle does not have or own a viable claim. Without a claim, Greener maintains that Cadle lacks standing to commence an action in the bankruptcy action to object to his discharge as a debtor.

In response, Cadle contends that there is no evidence to support Greener's assertions, and that even if the facts alleged by Greener are true, the issue raised is one of legal capacity rather than standing. Cadle further contends that Greener waived his capacity argument by failing to timely raise it in state court. The court agrees.

█ Capacity is a party's legal authority to go into court and prosecute or defend a suit, whereas standing is a party's justiciable interest in the suit and is a component of subject matter jurisdiction. *Nootsie, Ltd. v. Williamson County Ap-*

*praisal Dist.*, 925 S.W.2d 659, 661 (Tex. 1996). "A plaintiff has standing when it is personally aggrieved, regardless of whether it is acting with legal authority; a party has capacity when it has the legal authority to act, regardless of whether it has a justiciable interest in the controversy." *Id.* Tex.R. Civ. P. requires that matters regarding the following be verified by affidavit: (1) a plaintiff's capacity to sue; (2) a plaintiff's entitlement to recover in the capacity in which it sues; and (3) a defect of parties, plaintiff or defendant. Tex.R. Civ. P. 93(1), (2), (4). Additionally, assertions such as Greener's, that the cause of action brought by the plaintiff is owned by another party, must be raised by a verified denial. *Matthiessen v. Schaefer*, 900 S.W.2d 792, 795 (Tex.App.-San Antonio 1995, writ denied). If not raised by verified plea or denial, the issue is waived and not properly preserved for appeal. *Nootsie*, 925 S.W.2d at 662.

Here, Greener first questioned RTC's capacity in the bankruptcy court, almost ten years after the state court judgment was entered. Having made no verified denial in state court before judgment was entered, Greener waived the issue and any right to complain about the matter on appeal. *See, e.g., Roark v. Stallworth Oil & Gas, Inc.*, 813 S.W.2d 492, 494 (Tex.1991).[1]

■ Alternatively, Greener contends that even if Cadle owns a claim against him, the guarantees are no longer enforceable, because the four-year statute of limitations period for commencing an action on the guarantees has lapsed. For support, Greener cites Tex. Civ. Prac. & Rem.Code 16.004(a)(3) (Vernon 2002) and *Wiman v. Tomaszewicz*, 877 S.W.2d 1 (Tex.App.-Dallas 1994, reh'g denied), for the proposition that the statute of limitations for commencing an action on a guaranty is four years. Cadle responds that Greener waived the affirmative defense of limitations by failing to raise it in his answer. The court agrees that this issue was waived.[2] *See* Fed.R.Civ.P. 8(c).

■ Moreover, even assuming that the statute of limitations defense was properly raised and fleshed out in the bankruptcy court, which it was not, Greener's argument is without merit, because Cadle filed the adversary claim in bankruptcy court,

---

1. The federal rules similarly require that the issue of capacity be raised by negative averment. Fed. R. Civ. P 9(a). Failure to do so before judgment is entered results in waiver. *See Howerton v. Designer Homes by Georges, Inc.*, 950 F.2d 281, 283 (5th Cir.1992)

2. Although Greener raised the affirmative defense of statute of limitations in his Original Answer, filed in April 2000, he did not raise it with respect to the guarantees as is shown by the following excerpt from his answer:

> If Plaintiff is complaining about the transfers of property by Defendant to the Trust, then such complaint is, at a minimum, barred by applicable statute of limitations. If Plaintiff is not, in fact, complaining about the transfers of property to the Trust, but is instead taking the position that the Trust assets actually belong to Mr. Greener, such is simply, as a matter of law, without basis, as can be verified by the conveyancing documents.

Defendant's Original Answer, Supplemental Vol. 2 at 326. This would not have put Cadle on notice of Greener's limitations defense as to the guarantees. Even if the court were to liberally construe the pleading, no further mention of the defense was ever made after Greener filed his Original Answer. It was not raised or addressed in his motion for summary judgment or any other motion filed with the bankruptcy court prior to judgment being entered; nor was it raised in his motion for leave to pursue an interlocutory appeal of the bankruptcy court's denial of his motion for summary judgment. *See* Supplemental Vol. 3 at 520. In fact, it was not until this post-judgment appeal was taken that Greener first attempted to breathe life into his limitations defense, although nothing prevented him from raising or presenting the matter to the bankruptcy court.

not to recover or collect on the guarantees, but to recover on the state court judgment. It is undisputed that RTC brought an action to recover on the Greener guarantees in state court in 1991 and prevailed. Accordingly, the various assignments that took place after the judgment was entered in favor of RTC in state court were assignments of the state court judgment, not the guarantees.

## B. Evidentiary Rulings

### 1. The Parties Contentions

Greener contends that the bankruptcy court erred in admitting into evidence Plaintiff's Exhibit N ("Partnership Agreement"), Defendant's Exhibit 32 ("Contribution Agreement"), and Defendant's Exhibit 10 ("RTC–Premier Assignment"). Regarding the Partnership Agreement, Greener contends that it is inadmissible hearsay for which no exception applies, Greener contends that the bankruptcy court erred in admitting the Contribution Agreement because: (1) it is inadmissible hearsay; (2) it was not properly authenticated as required by Fed.R.Evid. 901; and (3) it is an incomplete document without an "Exhibit A." Greener argues that the Contribution Agreement was not properly admitted as a business record, because Cadle failed to lay the proper foundation. Specifically, Greener contends that: (1) Cadle did not produce a witness at trial with personal knowledge of RTC's business keeping records; (2) the document was not created by Premier or Cadle; and (3) neither Premier nor Cadle signed the document. With respect to Defendant's Exhibit 10 (RTC–Premier Assignment), Greener argues that the document is inadmissible, because: (1) it is hearsay and inadmissible as a business record for the same reason the Contribution Agreement is inadmissible under Fed.R.Evid. 803(6); (2) it is incomplete under Fed.R.Evid. 106 and

cannot be understood without the Partnership Agreement and the Contribution Agreement, which are inadmissible; (3) it is incomplete without an Exhibit A and inadmissible under Fed.R.Evid. 106; (4) it was not properly authenticated as required by Fed.R.Evid. 901; and (5) its authenticity as an original is questionable under Fed.R.Evid. 1002 and 1003, because the attachment to the document is not labeled "Exhibit A," and the date is inconsistent with the main document. Specifically, Defendant's Exhibit 10 (RTC–Premier Assignment) refers to an attached "Exhibit A"; however, the attachment is not labeled as such. In addition, Greener points out that the RTC–Premier Assignment is dated May 19, 1994, whereas the attachment to the document is dated June 6, 1994. He therefore contends that the document's authenticity as an original is suspect. Regarding the standard of review, Greener acknowledges that the standard for reviewing evidentiary rulings is generally abuse of discretion, but maintains that his evidentiary challenges should be reviewed *de novo,* because they "raise predominantly legal questions regarding the interpretation of the Federal Rules of Evidence ...." For support that the bankruptcy court's evidentiary rulings should be reviewed *de novo,* Greener cites *United States v. Angwin,* 271 F.3d 786, 798 (9th Cir.2001), *cert. denied,* 535 U.S. 966, 122 S.Ct. 1385, 152 L.Ed.2d 375 (2002).

Cadle, on the other hand, contends that applicable standard of review is abuse of discretion and maintains that the bankruptcy court did not abuse its discretion in admitting the documents in question. Cadle contends that the Contribution and Partnership Agreements do not constitute hearsay, because they were not offered to prove the truth of the matter asserted, and they do not prove or disprove any part of its claim against Greener. The documents

were instead offered to provide context or background information, because Greener objected at trial that the documents could not be understood in isolation. Cadle further maintains that Defendant's Exhibit 10 (RTC–Premier Assignment) was properly admitted as a business record and is supported by the testimony of Christopher D. Cimino ("Cimino").

## 2. Applicable Legal Standard

▮▮▮▮▮▮ "[A] bankruptcy court's evidentiary rulings are reviewed for abuse of discretion," *In re Graves*, 70 Fed.Appx. 752, 753 (5th Cir.2003) *(per curiam )* (citing *Hitt v. Connell*, 301 F.3d 240, 249 (5th Cir.2002)). Bankruptcy courts acting as trial courts are "ordinarily accorded wide latitude and discretion in making evidentiary rulings," and such rulings are overturned only where the trial court has abused its discretion or where plain error has occurred. *Jackson v. Firestone Tire & Rubber Company*, 788 F.2d 1070, 1075 (5th Cir.1986); *see e.g.*, *Anderson v. Siemens Corp.*, 335 F.3d 466, 470–73 (5th Cir.2003). If, however, the "evidentiary ruling is based solely on the resolution of a legal issue," it is reviewed *de novo*. *Moss v. Ole South Real Estate, Inc.*, 933 F.2d 1300, 1305–06 (5th Cir.1991) (citing *Nachtsheim v. Beech Aircraft Corp.*, 847 F.2d 1261, 1266 (7th Cir.1988)) ("where the dis-

trict judge's decision to exclude or admit the evidence is based solely on the resolution of a legal issue, not subject to the district judge's discretion, then our standard of review is not abuse of discretion, but rather *is de novo.*").[3]

Here, Greener contends that the standard of review is *de novo*, but other than stating in a conclusory fashion that his objections and issues involve legal questions, Greener provides no basis for his assertions. Having reviewed the bankruptcy court's rulings, the court cannot say that any of its rulings was based solely on the resolution of a legal issue. The court therefore reviews the bankruptcy court's rulings for an abuse of discretion.[4] Greener thus has the "burden of demonstrating both that the bankruptcy court abused its discretion in admitting the evidence and that [his] substantial rights were thereby prejudiced." *Roberts v. Poole*, 80 B.R. 81, 87 (N.D.Tex.1987) (citing *Wallace v. Ener*, 521 F.2d 215, 222 (5th Cir.1975) (error must rise above threshold of harmless error); Fed.R.Evid. 103 (Fed. R. Bankr.P. 9017); Fed.R.Civ.P. 61 (Fed. R. Bank. P. 9005); and *Foster v. Ford Motor Co.*, 621 F.2d 715, 721 (5th Cir.1980) (evidentiary rulings must be affirmed unless they affect a substantial right of the complaining party)).

**3.** The Fifth Circuit in *Moss* also cited *United States v. Pecora*, 798 F.2d 614, 626 (3d Cir. 1986), *cert denied*, 479 U.S. 1064, 107 S.Ct. 949, 93 L.Ed.2d 998 (1987), which stated the following in determining the applicable standard:

The scope of review of the trial court's trustworthiness determination depends on the basis for the ruling. When the trial court makes Rule 104(a) findings of historical fact about the manner in which a report containing findings was compiled we review by the clearly erroneous standard of Fed.R.Civ.P. 52. But a determination of untrustworthiness, if predicated on factors

properly extraneous to such a determination, would be an error of law .... There is no discretion to rely on improper factors .... [W]e believe there is an element of discretion involved in weighing the various factors of reliability which is not present in the more straightforward determination of availability, justifying application of the more complicated *Japanese Electronics* standard.

**4.** Applying the *de novo* standard of review, the court reaches the same result regarding the bankruptcy court's rulings on the admissibility of the evidence challenged by Greener.

### 3. Analysis

After carefully reviewing the record, the court determines that the bankruptcy court did not abuse its discretion in admitting the three challenged documents, and Greener has not demonstrated that his substantial rights were affected by the admission of the Partnership Agreement or the Contribution Agreement.

### a. Hearsay and Authentication Objections to the Partnership and Contribution Agreements

■ Regarding Greener's hearsay arguments and the bankruptcy court's decision to admit Plaintiff's Exhibit N, the Partnership Agreement, and Defendant's Exhibit 32, the Contribution Agreement, the court determines that these documents do not constitute hearsay and were properly authenticated under Rule 901[5] by the testimony of Cimino, who was familiar with these documents and the related transactions. Hearsay statements are not admissible unless covered by an exception under the Federal Rules of Evidence. Fed. R.Evid. 802. A statement is hearsay if: (1) it is made by someone other than the declarant while testifying at trial or a hearing; and (2) is offered in evidence to prove the truth of the matter asserted. Fed.R.Evid. 801(c). Here, it is clear from the record that the Partnership and Contribution Agreements were presented only for the purpose of providing background information or to put the RTC–Premier Assignment into context. Because they were not offered for the truth of the matter asserted, they are not hearsay. Since the documents were offered only for the purpose of context and are not relied on by Cadle to prove its claim, it is of no moment that the Contribution Agreement was allegedly missing an attachment labeled "Exhibit A." Any such objection goes to the weight to be given the document, not its admissibility.

Even if the Partnership and Contribution Agreements are hearsay, their admission was harmless, because the point, if any, sought to be established with these documents is necessarily established with the RTC–Premier Assignment, which the court determines was properly admitted as a business record for the reasons herein stated. Accordingly, no harm could have resulted from the admission of the Partnership Agreement or the Contribution Agreement.[6] Having determined that the

5. Rule 901 provides, in relevant part, that "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." This requirement can be satisfied a number of ways, including testimony of a witness with knowledge "that a matter is what it is claimed to be." Fed.R.Evid. 901(b)(1).

6. Moreover, these documents are admissible under Fed.R.Evid. 106, which is designed "to permit the contemporaneous introduction of recorded statements that place in context other writings admitted into evidence which, viewed alone, may be misleading." *United States v. Branch*, 91 F.3d 699, 727 (5th Cir. 1996). The purpose of Rule 106 is to ensure "fairness" by allowing an adverse party to introduce evidence at that time, "which ought in fairness to be considered contemporaneously" with the proffered writing or recorded statement. Fed.R.Evid. 106. To be admitted into evidence, the other recorded statement must be relevant and "necessary to qualify, explain, or place into context the portion already introduced." *Id.* at 728. Here, Greener argues that Defendant's Exhibit 10 (RTC–Premier Assignment) is incomplete without the Partnership Agreement and the Contribution Agreement, and Cadle offered the documents for purposes of placing the RTC–Premier Assignment in context. Although the court determined that the RTC–Premier Assignment is not necessarily incomplete without the Partnership Agreement and the Contribution Agreement, the documents are relevant and helpful for purposes of providing background information and placing the RTC–Premier As-

Partnership and Contribution Agreements were properly admitted as nonhearsay and for purposes of context under Rule 106, the court need not address Greener's remaining arguments regarding the inadmissibility of the Contribution Agreement as a business record.

### b. Admission of the RTC–Premier Assignment as a Business Record

■ As stated previously, Greener argues that the RTC–Premier Assignment is not admissible as a business record because: (1) Cadle did not produce a witness at trial with personal knowledge of RTC's business keeping records; and (2) the document was not created by Premier or Cadle, and neither were signatories to the document. The court disagrees.

■ "There is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy." *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir.), *cert denied*, 500 U.S. 926, 111 S.Ct. 2036, 114 L.Ed.2d 121 (1991) (citing *United States v. Iredia*, 866 F.2d 114, 119–20 (5th Cir.), *cert. denied*, 492 U.S. 921, 109 S.Ct. 3250, 106 L.Ed.2d 596 (1989) and *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 533 (5th Cir.1986)). "Furthermore, there is no requirement that the records be created by the business having custody of them." *Id.* (citing *Mississippi River Grain Elevator, Inc. v. Bartlett & Co., Grain*, 659 F.2d 1314, 1319 (5th Cir. Unit A 1981)); *see*

*also, Rosenberg v. Collins*, 624 F.2d 659, 665 (5th Cir.1980) ("Any person in a position to attest to the authenticity of certain records is competent to lay the foundation for the admissibility of the records; he need not have been the preparer of the record, nor must he personally attest to the accuracy of the information contained in the records."). Moreover, after reviewing the record, the court determines that Cimino's deposition testimony was sufficient to lay the proper foundation for the RTC–Premier Assignment as a business record under Rule 803(6), and it was properly admitted as such.[7]

### c. Alleged Discrepancies or Incompleteness of Defendant's Exhibit 10 (RTC–Premier Assignment)

■ Greener also contends that Defendant's Exhibit 10 (RTC–Premier Assignment) is inadmissible due to inaccuracies or discrepancies and incompleteness; again, however, arguments regarding the accuracy or incompleteness of the document go to the weight of the evidence, not its admissibility. Even if it were a matter of admissibility, the court disagrees that Defendant's Exhibit 10 (RTC–Premier Assignment) is incomplete without the Partnership Agreement and the Contribution Agreement, as these documents merely set forth the respective roles of RTC and Premier in the Contribution Agreement and the terms of the partnership. While the RTC–Premier Assignment references the

signment, as well as the Premier–Cadle Assignment, in context.

7. Rule 803(6) provides in pertinent part:
 Records of regularly conducted activity. A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness.

parties' Contribution Agreement, it is easily understood alone without the Partnership Agreement or the Contribution Agreement. In addition, although the attachment to Defendant's Exhibit 10 (RTC–Premier Assignment) is not labeled "Exhibit A," it is clearly a list of assets or "Transfer of Assets," which is what Exhibit A is supposed to be, according to the text of the RTC–Premier Assignment. Included on the attachment's list of transferred assets are two entries under Greener's name for the amounts of $1,277,651.12 and $276,015.59. These amounts are consistent with the amounts stated in the state court judgment in favor of RTC, as well as the assignment from Premier to Cadle.

Defendant's Exhibit 10 (RTC–Premier Assignment) is further supported by the testimony of Cimino, who testified by deposition at trial that he worked for Premier from November 1993 to November 2000, during the time the RTC–Premier partnership existed. Cimino stated that it was his job as an asset manager for Premier to process assets Premier received from RTC. He also stated that he was familiar with the Contribution Agreement that Premier entered in December 1993 with RTC, as well as the transfer of assets from Premier to Cadle.

To put the RTC–Premier Partnership and Contribution Agreements and the RTC–Premier Assignment in context, Cimino explained that RTC had taken over a number of failed Texas banks and entered the RTC–Premier Partnership Agreement for the purpose of contributing the assets or nonperforming loans it acquired to the partnership via the parties' Contribution Agreement. With respect to the process used, Cimino explained that the assets contributed to the partnership were contributed in pools in various stages, and, as a result, it was not unusual

for the dates of the contributed assets or pools of assets to differ from the execution date of the Contribution Agreement. This was so even though each pool of assets referred to the Partnership and Contribution Agreements executed on December 30, 1993. According to Cimino, every time RTC contributed assets, Premier would execute an assignment and bill of sale in accordance with the parties' Contribution Agreement.

With respect to the RTC–Premier Assignment and its attachment, which included the RTC state court judgment against Greener, Cimino asserted unequivocally that it was the original document, not a copy. He also explained that RTC–Premier Assignment was a "contribution of assets on a subsequent closing date," as defined in Section 2 of the Contribution Agreement, and he believed the contribution and transfer of assets was done in accord with the Contribution Agreement even though the attachment to RTC–Premier Assignment was not labeled "Exhibit A." He could not explain why the attachment was not labeled "Exhibit A;" however, regarding the discrepancy in dates between the RTC–Premier Assignment and the attachment, Cimino stated that it was not uncommon for a schedule attached to an assignment document to reflect a later or even earlier date, because the assignment documents that were executed by RTC were circulated within RTC or out to their counsel before they were forwarded to the partnership. According to Cimino, the dates of the attached schedule merely reflected the date the particular schedule had been run. Finally, with respect to Defendant's Exhibit 10 or the RTC–Premier Assignment, Cimino testified that:

> It was his understanding that the assets listed on the schedule dated June 6, 1994 which [is] identified as pool ... DAL–03, ... was, in fact, the same pool being

transferred as identified on the trust receipt dated May 19, 1994 that is identified as partnership DAL–03.

Supplemental Vol. 1 at 190.

 Based on this evidence, the court determines that the bankruptcy court did not err in admitting Defendant's Exhibit 10 (RTC–Premier Assignment) over Greener's objections that the document was incomplete, unauthenticated, and an inadmissible duplicate, that is, not the original document. Even if the RTC–Premier Assignment is a duplicate rather than the original document,[8] as Greener argues, the court determines that Greener has not produced sufficient evidence to raise a genuine question as to the authenticity of the document admitted as Defendant's Exhibit 10 (RTC–Premier Assignment) as required by Fed.R.Evid. 1003; nor has he presented evidence that Cadle lost or destroyed the original of the RTC–Premier Assignment in bad faith. *See* Fed.R.Evid. 1002; 1003;[9] and 1004.[10] The court further determines that Cimino had sufficient knowledge to testify, and did so testify, that Defendant's Exhibit 10 is what Cadle claims it to be, that is, the original of the RTC–Premier Assignment, containing the state court judgment against Greener. The document was therefore properly authenticated in accordance with Rule 901(b)(1). For all of the reasons stated, the court determines that the bankruptcy court did not err or abuse its discretion in admitting the Partnership Agreement, the

Contribution Agreement, and the RTC–Premier Assignment into evidence.

## C. Law of the Case Doctrine

Greener contends that the law of the case doctrine is applicable to the bankruptcy court's prior ruling that the RTC–Premier Assignment or Defendant's Exhibit 10 was inadmissible, because it was hearsay without an exception and failed to satisfy the best evidence rule. Greener therefore maintains that the bankruptcy court erred by later revisiting the prior decision and ruling that the document was admissible. Cadle responds that the bankruptcy judge's prior ruling, which was a pretrial interlocutory ruling by a visiting judge based on limited summary judgment evidence, was discretionary and in no way binding on the bankruptcy court. According to Cadle, the bankruptcy court was justified in re-examining the prior evidentiary rulings after receiving additional evidence at trial. The court agrees.

 "When the law of the case doctrine is applied by a court to its own prior decisions, it is properly characterized as discretionary in nature." *United States v. O'Keefe*, 169 F.3d 281, 283 (5th Cir.1999) (citing James Wm. Moore *et al.*, 18 Moore's Federal Practice § 134.21[1] (3d ed.1998)). "A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would

---

**8.** Rule 1002 provides that "[t]o prove the content of a writing, recording, or photograph, the original writing, recording, or photograph is required, except as otherwise provided in these rules or by Act of Congress."

**9.** Rule 1003 provides that "[a] duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the

circumstances it would be unfair to admit the duplicate in lieu of the original."

**10.** Federal Rule of Evidence 1004 states that "[t]he original is not required, and other evidence of the contents of a writing, recording, or photograph is admissible if ... [a]ll originals are lost or have been destroyed, unless the proponent lost or destroyed them in bad faith."

work a manifest injustice.' " *Id.* (quoting *Christianson v. Colt Indus.,* 486 U.S. 800, 817, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988)); *see also Illinois Union Ins. Co. v. Tri Core Inc.,* 191 F.Supp.2d 794, 798 n. 13 (N.D.Tex.2002). The law of the case doctrine, however, is not a barrier to correction of judicial error and is no way sacrosanct. *Loumar, Inc. v. Smith,* 698 F.2d 759, 762 (5th Cir.1983).

█ The prior decision that Greener refers to was made by United States Bankruptcy Judge Steven A. Felsenthal based on summary judgment evidence submitted by the parties. After hearing additional evidence regarding the discrepancies in dates and labels during the trial of this case on August 28, 2001, United States Bankruptcy Judge Robert C. McGuire ruled that Defendant's Exhibit 10 or the RTC–Premier Assignment was admissible over Greener's objections. In light of the additional evidence presented at trial, the court determines that the bankruptcy court did not err in revisiting Judge Felsenthal's prior ruling, and for the reasons already stated, the bankruptcy court did not abuse its discretion in admitting this evidence.

## IV. *Conclusion*

For all of the reasons stated, the bankruptcy court's September 27, 2001 Memorandum Opinion on Standing of Plaintiff and Judgment on Standing of Plaintiff is affirmed. Pursuant to Rule 8016(a) of the Federal Rules of Bankruptcy Procedure, the clerk of the court is directed to prepare, sign and enter judgment upon receipt of and in accordance with this Memorandum Opinion and Order. All allowable and reasonable costs shall be taxed against Appellant Charles William Greener.