**WOLF DESIGNS, INC., Plaintiff,**

v.

**DONALD MCEVOY LIMITED, INC. and Donald McEvoy, Defendants.**

Nos. Civ.A.3:03–CV–2837–G, Civ.A.3:04–CV–0348–G.

United States District Court, N.D. Texas, Dallas Division.

Jan. 31, 2005.

See also 341 F.Supp.2d 639.

Richard D. Anigian, John Russell Emerson, Haynes & Boone, Dallas, TX, Donald M. Cislo, Kelly W. Cunningham, Mark D. Nielsen, Cislo & Thomas, Santa Monica, CA, for Plaintiffs.

Linda R. Stahl, Andrews & Kurth, Dallas, TX, Bruce A. Fields, Steven H. Haney, Haney Buchanan & Patterson, Los Angeles, CA, for Defendants.

Hesha Abrams, Abrams Mediation & Negotiation Inc., Dallas, TX, pro se.

### MEMORANDUM ORDER

FISH, Chief Judge.

Before the court is the motion of the defendants Donald McEvoy Limited, Inc. and Donald E. McEvoy (collectively, "McEvoy") to reopen these cases, lift a previously imposed stay, and transfer venue to the United States District Court for the Northern District of Georgia. For the reasons discussed below, McEvoy's motion is denied.

### I. BACKGROUND

These cases involve a patent dispute between Wolf Designs and Donald McEvoy Limited, Inc. Plaintiff Wolf Designs, Inc. ("Wolf Designs") is a California corporation with its principal place of business in Malibu, California. See Plaintiff's Original Complaint ("Complaint") ¶ 2. Defendant McEvoy is a Texas corporation with its principal place of business in Dallas, Texas. See id. ¶ 3. Both corporations are in the business of designing and selling jewelry boxes. See id. ¶¶ 10–16.

On July 2, 2003, Wolf Designs filed suit in the United States District Court for the Central District of California, Case No. CV–03–4729–SJO (the "California Action") alleging that Collectives, Inc. ("Collectives") had infringed its design patent for jewelry boxes. Plaintiff Wolf Designs' Brief in Support of Amended Motion to Stay Proceeding ("Wolf Designs' Brief") at 2; Defendant's Response to Plaintiff's Amended Motion to Stay ("McEvoy's Response Brief") at 2. The California Action was brought against the following persons: Collectives, a company which—like Wolf Designs—sells jewelry boxes; DHR & Company ("DHR"), a sales representative of Collectives; Stein Mart, Inc., a Florida based customer which purchased jewelry boxes from Collectives through DHR; David Richardson, a principal of DHR; and Shea Robinson and Michael Meyer, two sales representatives in Florida. Defendant Donald McEvoy's Opposition to Motion to Stay Proceedings ("Opposition to Motion to Stay Proceedings") at 3. Shortly thereafter, Wolf Designs filed a case in California against McEvoy, an established sales representative which has sold Collectives' products in the Dallas area. Id.; McEvoy's Response Brief at 2.

Eventually, Wolf Designs dismissed its claims against Robinson and Meyers in the California Action for lack for personal jurisdiction over those defendants. See Opposition to Motion to Stay Proceedings at 3. In addition, Wolf Designs dismissed the McEvoy action in California because McEvoy only sold jewelry boxes in Texas and lacked minimum contacts with California. Plaintiff Wolf Designs' Reply Brief in Support of Amended Motion to Stay Proceedings ("Wolf Designs' Reply Brief") at 1; McEvoy's Response Brief at 2. On February 4, 2004, Wolf Designs filed a separate action against Collectives and DHR in California alleging patent infringement with respect to three particular jewelry boxes,

which was later consolidated with the trade dress action for purposes of discovery and trial. *See* Wolf Designs' Brief at 2; McEvoy's Response Brief at 2. The trial in the California Action was set for November 2004. Wolf Designs' Brief at 2.

On November 24, 2003, while the California Action was pending, Wolf Designs filed the first of these Texas suits against McEvoy alleging, *inter alia*, trade dress infringement and false advertising. McEvoy's Response Brief at 2; *see generally* Complaint ¶¶ 17–45. On February 19, 2004, Wolf Designs filed a second Texas suit against McEvoy for patent infringement. McEvoy's Response Brief at 3. These two cases were consolidated by order dated June 4, 2004 (collectively, the "Texas Action").[1] *Id.*

McEvoy attempted to conduct discovery in the Texas Action, serving interrogatories and requests for production on Wolf Designs on February 9, 2004. *Id.* Additionally, McEvoy noticed the deposition of Wolf Designs and its principal on this same date. *Id.* Although Wolf Designs sought extensions of time to respond to the discovery requests and plead the need to reschedule the depositions, it never contended that discovery should be delayed due to the California Action. *Id.* Barely a week before the scheduled deposition was set to take place, however, Wolf Designs filed its first motion to stay.[2] See *id.;*

Plaintiff Wolf Designs' Motion to Stay the Proceedings ("Wolf Designs' First Motion to Stay").

McEvoy moved on June 3, 2004 to compel the depositions of Wolf Designs and its principal and on June 7, 2004 to compel further interrogatory responses and document production. McEvoy's Response Brief at 4. McEvoy's motion to compel the depositions was set for hearing, by order dated June 9, 2004, before United States Magistrate Judge Paul D. Stickney; however, Wolf Designs filed its amended motion to stay the next day.[3] *Id.; see also* Plaintiff's Wolf Designs' Amended Motion to Stay the Proceedings ("Amended Motion to Stay"). As a consequence of Wolf Designs' Texas Action against McEvoy, McEvoy has suspended sales of the allegedly infringing jewelry boxes. McEvoy's Response Brief at 4.

On October 15, 2004, this court granted Wolf Design's Amended Motion to Stay. Memorandum Order (October 15, 2004). Shortly thereafter, on October 19, 2004, the California Action was transferred to the United States District Court for the Northern District of Georgia. Defendants' Motion to Reopen the Case, Lift the Stay and Transfer Venue to the United States District Court, Northern District Georgia, Atlanta Division ("Motion to Transfer") at 2. With the stay still intact, this court

---

1. Unlike the claims in the California Action, there are no claims against McEvoy in the Texas Action for either breach of contract or misappropriation of trade secrets. *See* Complaint ¶¶ 17–45.

2. Wolf Designs' first motion to stay related solely to the November 2003 trade dress suit. McEvoy's Response Brief at 3. On May 28, 2004, Wolf Designs filed a separate motion to stay the patent case. *Id.* Prior to seeking a stay, Wolf Designs had agreed to dismiss these cases without prejudice so that the California Action could go forward and the findings could be applied to the instant case to

limit the need for trial if these cases were refiled. Wolf Designs' Brief at 3; *see also* Certificate of Conference, *attached to* Plaintiff's Amended Motion to Stay the Proceeding ("Amended Motion to Stay"). McEvoy's counsel, however, refused to agree to a stipulated dismissal of these cases without prejudice. Wolf Designs' Brief at 3.

3. The amended motion to stay appeared to rely on exactly the same authority as the previously filed motion to stay, and is substantively identical to the May 28, 2004 motion. McEvoy's Response Brief at 4.

administratively closed these cases on November 30, 2004. Order (November 30, 2004).

Then, in response to the transfer of the California Action, McEvoy filed this motion on December 8, 2004, asking the court to reopen these cases, lift the stay, and transfer venue to the Northern District of Georgia. Motion to Transfer at 2–3.

## II. *ANALYSIS*

### A. *Wolf Design's Motion to Transfer Pursuant to 28 U.S.C. § 1404(a)*

#### 1. *The Legal Standard*

█ A district court may transfer any civil case "[f]or the convenience of parties and witnesses, in the interest of justice, ... to any other district or division where it might have been brought."[4] 28 U.S.C. § 1404(a). As a threshold matter, the language of Section 1404(a) requires the court to determine whether the proposed transferee district is one in which the suit might have been brought. *Illinois Union Insurance Company v. Tri Core Inc.*, 191 F.Supp.2d 794, 797 (N.D.Tex.2002); *Eastman Medical Products, Inc. v. E.R. Squibb & Sons, Inc.*, 199 F.Supp.2d 590, 595–96 (N.D.Tex.2002). Such a district "is one in which upon commencement of the suit the plaintiff ha[d] a right to sue independently of the wishes of the defendant." *Independent Fish Company v. Phinney*, 252 F.Supp. 952, 953 (W.D.Tex.1966) (citing *Hoffman v. Blaski*, 363 U.S. 335, 80 S.Ct. 1084, 4 L.Ed.2d 1254 (1960)). "[V]enue must have been proper in the transferee district and the transferee court must have had power to command jurisdiction over ... the defendant[ ]." *Illinois Union Insurance Company*, 191 F.Supp.2d at 797 (quoting *Shutte v. Armco Steel Corporation*, 431 F.2d 22, 24 (3d

Cir.), *cert. denied*, 401 U.S. 910, 91 S.Ct. 871, 27 L.Ed.2d 808 (1971)). That the defendant later consents to jurisdiction in another forum is irrelevant. *Independent Fish Company*, 252 F.Supp. at 953.

█ After determining that the transferee district is one in which the case might have been brought, the court considers "all relevant factors to determine whether or not on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum." *Peteet v. Dow Chemical Company*, 868 F.2d 1428, 1436 (5th Cir.) (internal quotations and citations omitted), *cert. denied*, 493 U.S. 935, 110 S.Ct. 328, 107 L.Ed.2d 318 (1989); see also *Illinois Union Insurance Company*, 191 F.Supp.2d at 797 (stating that the second part of the 1404(a) transfer analysis, after determining that the transferee court is one in which the case might have been brought, is to examine the convenience of the parties and witnesses, and whether the transfer is in the interest of justice). These factors include: (1) the convenience of the parties, (2) the convenience of material witnesses, (3) the availability of process to compel the presence of unwilling witnesses, (4) the cost of obtaining the presence of witnesses, (5) the relative ease of access to sources of proof, (6) calendar congestion, (7) where the events in issue took place, and (8) the interests of justice in general. *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No. 3:02–CV–2538–G, 2003 WL 21251684, at *2 (N.D.Tex. May 23, 2003) (Fish.C.J.); see also *Gundle Lining Construction Corporation v. Fireman's Fund Insurance Company*, 844 F.Supp. 1163, 1165 (S.D.Tex. 1994).

---

4. "The moving part[y] bear[s] the burden of proving by a preponderance of the evidence that transfer is appropriate." *Bank One, N.A.*

*v. Euro–Alamo Investments, Inc.*, 211 F.Supp.2d 808, 812 (N.D.Tex.2002).

■ McEvoy seeks, in his motion to transfer, an order from the court reopening these cases, lifting the stay, and transferring venue to the United States District Court for the Northern District of Georgia. Motion to Transfer at 2–3. A transfer is proper pursuant to 28 U.S.C. § 1404(a), McEvoy argues, because he "has agreed to have the case transferred to Georgia," Brief in Support of Defendants' Motion to Reopen, Lift Stay, and Transfer Venue ("McEvoy's Transfer Brief") at 12, and because "the factors considered by the district courts in transferring venue overwhelmingly favor transfer of this case...." *Id.* The court disagrees that these cases can be transferred pursuant to 28 U.S.C. § 1404(a). McEvoy has not demonstrated, by a preponderance of the evidence, that these cases could have been originally brought in the Northern District of Georgia.[5] McEvoy's own assertions, in fact, indicate that Georgia would not have had personal jurisdiction over him at the time these cases were filed. *See* Answer of Defendants Donald McEvoy, Ltd., Inc. and Donald McEvoy ¶ 3 (admitting that McEvoy is a Texas corporation); Declaration of Donald McEvoy (Filed Concurrently With the Motion to Dismiss Pursuant to F.R. CIV. P. 12[b][2]) ¶¶ 3–4, *attached to* Appendix to Wolf Designs' Opposition to Defendants'

Motion to Transfer at 1–3 (stating that McEvoy is a Texas corporation with its offices in Dallas, and that its "sales territories are *exclusively* within the States of Texas, Oklahoma, Louisiana, Arkansas and New Mexico") (emphasis added). The fact that McEvoy is now agreeable to having these cases heard in Georgia is irrelevant. The court does "not think the § 1404(a) phrase 'where it might have been brought' can be interpreted to mean, as [McEvoy's] theory would require[ ], 'where it may now be rebrought, with defendants' consent.'" *See Hoffman*, 363 U.S. at 342–43, 80 S.Ct. 1084. The language of Section 1404 is "unambiguous, direct (and) clear," *id.* at 343, 80 S.Ct. 1084 (quoting *Ex parte Collett*, 337 U.S. 55, 58, 69 S.Ct. 944, 93 L.Ed. 1207 (1949)), and "Congress indeed meant what it said." *Id.* (quoting *United States v. National City Lines, Inc.,* 337 U.S. 78, 84, 69 S.Ct. 955, 93 L.Ed. 1226 (1949)). Because the Northern District of Georgia is not a district in which these cases might have been brought, the court need not consider the factors pertaining to the convenience of the parties and witnesses.

## B. *The Stay*

### 1. *The Legal Standard*

■ "[T]he power to stay proceedings is incidental to the power inherent in every

---

**5.** McEvoy's transfer brief is devoted almost exclusively to arguing that transfer for the convenience of the parties and witnesses is proper; however, the brief leaves the court to connect the dots concerning McEvoy's contacts with the Northern District of Georgia. If the court assumes that McEvoy contacted Collectives' warehouse in Georgia to receive new shipments of jewelry boxes, then McEvoy would likely be subject to personal jurisdiction in Georgia. See *Southwest Offset, Inc. v. Hudco Publishing Co.,* 622 F.2d 149, 152–153 (5th Cir.1980) (finding minimum contacts when a foreign corporation placed repeated orders with an in-state corporation from which the foreign corporation expected to profit). If, on the other hand, the court assumes that McEvoy directed all of his correspondence to, and placed all of his orders through, Collectives' manager in New York, McEvoy's Transfer Brief at 9 (stating that Collectives' manager Yigal Gasko resides in New York), and that the boxes were simply shipped from Georgia, then it is unlikely that McEvoy had minimum contacts with Georgia. See *Stuart v. Spademan,* 772 F.2d 1185, 1191 (5th Cir.1985) (stating that minimum contacts with a state must be created through the foreign party's purposeful availment, not the unilateral activity of another party). In any event, the court will not speculate on the logistics of the relationship between McEvoy and Collectives.

court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. North American Co.,* 299 U.S. 248, 254, 57 S.Ct. 163, 81 L.Ed. 153 (1936). Such questions of docket management are left to the sound discretion of the district court, and it is the district court's responsibility to weigh the competing interests of the parties relating to the appropriateness of a stay. *Id.* at 254–55, 57 S.Ct. 163. The Fifth Circuit has specifically recognized that district courts have inherent power to stay or dismiss an action where the issues presented can be resolved in an earlier filed action pending in another federal district court. *West Gulf Maritime Association v. ILA Deep Sea Local 24,* 751 F.2d 721, 728–29 (5th Cir. 1985).

 On October 15, 2004, this court granted the motion of the plaintiff Wolf Designs, Inc. to stay these consolidated cases until the conclusion of a related action pending in the United States District Court for the Central District of California. That action was subsequently transferred to the Northern District of Georgia (the "Georgia Action"). The Georgia Action is merely a continuation of the California Action, and as McEvoy admits, "largely duplicative of" these cases. McEvoy's Transfer Brief at 1. Accordingly, for the reasons discussed in this court's memorandum opinion granting Wolf Designs' motion to stay, and in the exercise of this court's sound discretion, McEvoy's motion to lift the stay is denied.

### C. *Administrative Closure*

In an effort to manage this court's docket more efficiently, the above-styled and numbered cases will remain administratively closed. If further proceedings in these cases are needed after the Georgia Action is completed, the cases may be reopened, without prejudice, upon the motion of either the plaintiff or the defendants. The right to re-open these cases shall continue until 30 days after the Georgia Action is concluded.

**SO ORDERED.**