**WOLF DESIGNS, INC., Plaintiff,**

v.

**DHR & COMPANY, Collectives, Inc., and John Does 1–10, Defendants.**

**Wolf Designs, Inc., Plaintiff,**

v.

**DHR & Company, David Richardson, Collectives, Inc., and Stein Mart, Inc., Defendants.**

Nos. 1:04–CV–3220–JEC,
1:04–CV–3256–JEC.

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 27, 2005.

Daniel M. Cislo, Esq., Kelly Cunningham, Esq., and Mark D. Nielsen, Esq., of Cislo & Thomas LLP, Santa Monica, CA, for plaintiff.

Steven H. Haney, Esq. and Bruce A. Fields, Esq., of Haney Buchanan & Patterson LLP, Los Angeles, CA, for defendants.

## *ORDER*

CARNES, District Judge.

The two above related cases were transferred to this district from the Central District of California on November 1, 2004 and were assigned to the Honorable J. Owen Forrester. Five months later, on April 5, 2005, Judge Forrester recused himself and the present cases were assigned to the undersigned. They are now before this Court on a raft of motions,[1] some of which were

---

1. The motions are as follows:

As to Civil Action No. 1:04–CV–3220 ("Patent Infringement action"): Defendants DHR & Company's and Collectives, Inc.'s Motion to Consolidate Cases [32]; Defendants DHR & Company's and Collectives, Inc.'s Motion to Strike [37]; Defendants DHR & Company's and Collectives, Inc.'s Motion to Dismiss for Want of Prosecution [38]; Defendants DHR & Company's and Collectives, Inc.'s Motion for Oral Argument [42]; Defendants' Motion to Supplement Brief [44]; Defendants' Motion for Leave to Amend Answers to Verified "Trade Dress" Complaint and "Patent" Complaint [45]; AND Plaintiff's Motion for Leave to File Surreply to Defendants' Reply [59].

As to Civil Action No. 1:04–CV–3256 ("Trade Dress action"): Defendants DHR & Company's and Collectives, Inc.'s Motion for Summary Judgment or in the Alternative, Motion for Partial Summary Judgment [167]; Defendants DHR & Company's and Collectives, Inc.'s Motion for Sanctions and for Order to Show Cause [173]; plaintiff's Motion for Leave to File the Declaration of Katherine Baumann [181]; Defendants DHR & Company's and Collectives, Inc.'s Motion for Discovery and Motion for Reconsideration re Order from Other Court [193]; Defendants' Motion to Consolidate Cases [223]; Defendants' Application for Admission of Valerie Hanna Pro Hac Vice [227]; Defendants' Motion to Strike Experts [235]; Defendants DHR & Company's and Collectives, Inc.'s Motion to Dismiss for Want of Prosecution [236]; Defendants DHR & Company's and Collectives, Inc.'s Motion for Oral Argument [240]; Defendants' Motion to Supplement Brief in Support of Motion for Summary Judgment [242]; Defendants' Motion for Leave to Amend Answer to Verified "Trade Dress" Complaint and "Patent" Complaint [243]; AND Plaintiff's Motion for Leave to File Surreply to Defendants' Reply [256].

filed in the Central District of California and some of which were filed since the case was transferred to this district. Some of these motions continue to litigate procedural and discovery disputes that originated before the California court and make reference to the local rules of that Court, and to Orders and rulings by the presiding judge in that Court, the Honorable S. James Otero, as well as by the assigned magistrate judge. Locating the referenced materials from the California file has often been tedious, as some pleadings are in the file and some are difficult to find. To say that the files that this Court inherited from the California district court are confusing would be an understatement. Ultimately, the Court has determined that it cannot unscramble the filings before it sufficiently to rule on the pending summary judgment motion, although the Court has ruled on the other motions. As explained, *supra*, the Court will direct the filing of new pleadings to better acquaint the Court with the issues that need to be decided in the short term and to allow the Court to determine the order of proceedings to be followed in the future before this Court.

## I. Plaintiff's Claims [2]

Plaintiff was founded in Germany in 1834; its United States design team is located in Los Angeles County, California. Plaintiff is an industry leader in the production of leather jewelry boxes, having achieved success through innovative product design, numerous models, and quality manufacturing. Plaintiff has spent a substantial amount of money in promoting and advertising its products.

Defendant Richardson owns defendant DHR. Defendants DHR and Richardson were previously the Atlanta sales representatives for plaintiff. As the sales representatives, these defendants became privy to plaintiff's trade secrets and confidential business information, including market strategies, merchandising techniques, and sales methodologies.

All defendants are now competitors of plaintiff. DHR, Richardson, and Collectives have allegedly caused customers in their showrooms to believe that products other than those made by plaintiff were actual Wolf Designs products. Many of the products sold by defendants are not made of genuine leather, making them inferior to plaintiff's products. Defendant Stein Mart displays and offers for sale products that emulate plaintiff's products.

Plaintiff owns several patents. Plaintiff alleges that defendants had notice of these patents, but nevertheless are offering for sale boxes that infringe three of these patents. The three patents at issue in the patent case are:

(1) Octagonal Box: Patent D471,010, Wolf Style No. 3351, patent applied for May 20, 2002 and issued March 4, 2003;

(2) Pear Box: Patent D479.912, Wolf Style No. 3520, patent applied for Feb. 20, 2003 and issued Sept. 30, 2003; AND

(3) Round Box: Patent D480,211, Wolf Style No. 3441, patent applied for Feb. 20, 2003 and issued Oct. 7, 2003.

## II. PROCEDURAL HISTORY

Plaintiff filed the first case, 1:04–CV–3256–JEC (the "Trade Dress case"), on July 7, 2003 in the Central District of California. This complaint contains six (6) causes of action: false designation of origin; false advertising; trade dress infringement; breach of contract; misappropriation of trade secrets; and unfair competition. From the time between the filing of this complaint and the filing of the complaint in the second case, plaintiff voluntarily dismissed some defendants. Defendant Richardson filed a motion to dismiss for lack of personal jurisdiction, which was denied. Defendants answered the complaint.

Plaintiff filed the second case, 1:04–CV–3220–JEC (the "Patent Infringement case"), on February 5, 2004, alleging patent infringement by defendants. Defendants answered. The two cases were consolidated by the Central District of California court, in an order dated April 6, 2004.

Prior to consolidation, but after the filing of the second case, discovery in the unfair competition case commenced. There were several motions to compel, to strike, and for

2. The Court has derived the above facts from a reading of the plaintiff's two Complaints.

sanctions. The parties do not appear to have been cooperative during the discovery process. In August 2004, the parties were engaged in settlement discussions. Apparently these discussions were unsuccessful, as the cases continued on. Discovery deadlines were extended in the cases, with the final extension setting the close of discovery for September 7, 2004. (Standing Order [139].) From this Court's reading of this Order, the deadline for disclosure of experts was also on September 7, 2004.

Thereafter, defendants filed a motion to transfer the cases to the Northern District of Georgia, pursuant to 28 U.S.C. § 1404(a). Defendants apparently argued that the Central District of California was an inconvenient forum for its Georgia witnesses who could not be compelled by subpoena to appear in California. Although trial was set for November 23, 2004, and although the plaintiff apparently mounted a vigorous objection, Judge Otero granted defendants' motion to transfer both cases to the Northern District of Georgia on October 19, 2004. In this Order, Judge Otero noted plaintiff's objection that defendants had been extremely dilatory in bringing the motion on the eve of trial, having waited fourteen months to do so, and plaintiff's contention that defendants were filing the motion only because they had failed to conduct discovery and were seeking a new district that would allow them to reopen discovery. *Wolf Designs, Inc. v. DHR & Company, et al.*, Nos. CV–03–4729–SJO, CV–04–0772–SJO, at 6, 2004 WL 2982126 (C.D.Cal. Oct.19, 2004). Judge Otero also acknowledged plaintiff's argument that most of the witnesses identified by defendants who were subject to a subpoena from the Northern District of Georgia were also employees of

the defendants and therefore could be expected to attend a trial anywhere that it was held. (*Id.* at 8–10.) Nevertheless, Judge Otero decided that because compulsory process would be available over a greater number of witnesses were the trial held in Georgia, rather than California, the case should be transferred to the Northern District of Georgia.[3] (*Id.* at 15.)

The case is now in this district and before this Court on several motions relating to pretrial proceedings in the Northern District of California and on a motion for summary judgment as to the patent action. Most of the pending motions concern this patent action. Nevertheless, it is the Trade Dress case, the 04–3256 action, in which the motions have been docketed, although a few of these motions have also been docketed in the Patent Infringement case, the 04–3220 action. Nevertheless, the Court will proceed first to an analysis of the motions in the Trade Dress file, albeit these motions are directed to the patent action.

### III. Trade Dress Action–Case No. 1:04–CV–3256–JEC

#### A. Refiled Motions That Were Originally Filed in the Northern District of California

##### 1. Defendants DHR & Company's and Collectives, Inc.'s Motion for Discovery and Motion for Reconsideration re Order from Other Court [193] and Defendants' Motion to Strike Experts or, in the Alternative, to Dissolve Protective Order [235]

█ Defendants have refiled motions that were originally filed in the Northern District

---

**3.** Judge Otero also indicated that it would be advantageous to try the other pending actions—a patent infringement action in the Northern District of Texas brought by plaintiff against a related defendant and a Georgia state action brought by defendants to recover $1700 in lost commissions—in one district; the defendants had indicated that if the California action were moved to the Northern District of Georgia, the defendants would attempt to consolidate those actions with the Georgia federal case. It is not clear why the defendants could not have just as well tried to consolidate the Texas case with this case, had the present case remained in California.

At any rate, defendants did later attempt to transfer venue of the Texas action to this Court. On January 31, 2005, the Honorable A. Joe Fish, Chief Judge, Northern District of Texas, denied defendants' request to transfer the Texas federal action to this district, noting that such transfer was not appropriate under the law and the facts. (*Wolf Designs, Inc. v. Donald McEvoy Limited, Inc., et al.*, 355 F.Supp.2d 848, 852 (N.D.Tex. 2005)[)]. As to the Georgia state case, this Court, by today's Order, is denying defendants' request to consolidate that largely unrelated action with the present case before it. Thus, the California action is the only action being tried in this district.

of California. These motions pertain to disputes concerning pre-trial and discovery issues that arose while the case was proceeding in California. As noted *supra*, while these cases were still in the Northern District of California, plaintiff had opposed transfer of the case to this district. Plaintiff argued that defendants' purported basis for the transfer—that it could not compel its own Georgia employee witnesses to testify in a trial held in California—was nothing more than a pretext to delay the trial in the case and to allow the defendants to conduct discovery that they neglected to conduct during the scheduled discovery period. The zeal with which defendants attempted, unsuccessfully, to have the California court reopen discovery and have now attempted to persuade this Court to reopen discovery gives some credence to plaintiff's contention.

The pleadings indicate that, although the parties have disclosed their experts and expert reports to each other, neither party deposed the other's experts. As the parties only designated their experts on the last day of discovery, it was, in fact, impossible to depose each other's experts within the discovery period. Later, when defendants attempted to depose plaintiff's experts after the close of discovery, at a time when trial was only a few weeks away, the magistrate judge issued a protective order disallowing these depositions. Although requested to do so by defendants, the district court did not act to vacate the magistrate judge's Order.

Defendants now seek a "do-over" in this Court in an effort to undo the discovery rulings of the court that presided over the discovery process. This Court declines to do so. The rules in the Northern District of California concerning expert discovery differ from those in this district; thus the events that occurred there would not likely have

been repeated here had discovery originated in the Northern District of Georgia. Nevertheless, both parties were on notice of the extended and final date for the close of discovery. Had defendants wished to depose plaintiff's experts prior to the close of discovery, defendants could have taken steps to make that happen.

Moreover, much of defendants' advocacy on this point is effectively an argument that had Judge Otero kept this case, the merits of defendants' arguments should properly have persuaded him to reopen discovery. Trying to predict what Judge Otero would have done would require an awareness of the colloquies between the parties and court and an effort to interpret the local rules of the Northern District of California, whose rules differ from those in this district. Had defendants truly believed in the merits of their arguments, they presumably would have stayed in the Northern District of California and seen those arguments played out before the judge who had presided over discovery. Judge Otero knows better than this Court how the local rules of his district are interpreted and, having been involved directly in the litigation at the time in question, he knows best the dynamics of that litigation and wherein the equities of the parties' positions lies. Moreover, Judge Otero still sits and is still available to adjudicate this dispute. Indeed, as one of defendants' two purported reasons for transfer has now disappeared,[4] this Court cannot discern a strong reason for this case to stay in the Northern District of Georgia.[5] Accordingly, if defendants wish to transfer the case back to the Northern District of California, and the plaintiff agrees, this Court will do so. Otherwise, any arguments by defendants urging this Court to undo rulings by the Northern District of California will fall on deaf ears in this district.

4. As noted, defendants had argued that they sought to maximize judicial efficiency by transferring a related federal Texas case to this Court, as well. Again, it is not clear why defendants could not have attempted a transfer to California just as well as to Georgia, but in any event, the Northern District of Texas, unlike the Northern District of California, concluded that defendants had not shown a sound basis for transfer. Thus, wherever the present case is tried, there will be two patent cases arising out of this dispute that will be litigated in two districts.

5. With all due respect to the Order of transfer issued by Judge Otero, the purported inability to compel ones own employees to testify out-of-state is typically an unpersuasive reason for transferring litigation to another district, particularly when pre-trial proceedings have ended in the transferor district and a trial date is imminent.

Assuming that defendants will not wish to transfer the case back to the Northern District of California, this Court considers, on its merits, their request to reopen discovery, and finds their arguments unpersuasive. Discovery has closed and this Court declines to reopen it. At any rate, the Court is not sure what all the fuss is about. Defendants did not depose plaintiff's experts, but neither did plaintiff depose defendants' experts. Both sides have the experts' reports and will be able to present their designated experts and to cross-examine their opponent's expert at trial. In short, the Court **DENIES** Defendants DHR & Company's and Collectives, Inc.'s Motion for Discovery and Motion for Reconsideration re Order from Other Court [193] and Defendants' Motion to Strike Experts or in the Alternative to Dissolve Protective Order [235].[6] The motion filed in the Northern District of California seeking reconsideration of that Court's refusal to allow discovery to be reopened is docketed in this Court as Document # 193. It is likewise **DENIED**.

## 2. Defendants DHR & Company's and Collectives, Inc.'s Motion to Dismiss for Want of Prosecution [236]

While the case was still in the Northern District of California, defendants filed a motion to dismiss because plaintiff purportedly failed to comply with a directive of Judge Otero's in his Scheduling Order. See Defendants DHR & Company's and Collectives, Inc.'s Motion for Sanctions and for Order to Show Cause [173]. Specifically, that Order set a cut-off date of October 18, 2004 for motions to be filed and directed the parties to file cross-motions for summary judgment. Defendants have essentially refiled this motion in this Court and continue to seek the dismissal of plaintiff's action as a result of plaintiff's alleged non-compliance with the

California Scheduling Order. That is, because plaintiff did not file a motion for summary judgment, defendants contend that this Court should dismiss the patent infringement action.[7]

Plaintiff has argued that it did not understand the need to file a summary judgment motion, as plaintiff believed that there were disputed issues of fact that would preclude summary judgment. Defendants disagree with plaintiff's interpretation of the scheduling order and insist that plaintiff was on clear notice of its duty to file a motion for summary judgment.

Again, defendants have asked this Court to decide a motion that could best be decided by Judge Otero. It was his Scheduling Order that was allegedly violated. The motion to dismiss was before him for three weeks, before Judge Otero transferred the case to this Court. Had he believed that plaintiff had committed a breach of his scheduling order and had he believed that this breach was substantial enough to warrant the ultimate penalty for that breach—dismissal of plaintiff's case—one can reasonably infer that Judge Otero would have dismissed plaintiff's case instead of transferring it.

At any rate, this Court certainly cannot know what Judge Otero intended to be filed when he issued his scheduling order. The Court deems the matter ambiguous and will not dismiss a plaintiff's case because that plaintiff has failed to file a motion for summary judgment pursuant to an Order issued by another court that is unclear to this Court. Accordingly, the Court **DENIES** Defendants DHR & Company's and Collectives, Inc.'s Motion to Dismiss for Want of Prosecution [236].[8] The Court also **DENIES** the same motion, which was filed in the Northern District of California and is listed as a pending motion on this Court's docket: Defendants DHR & Company's and Collectives,

---

6. Defendants also filed a corresponding motion, Document # 37, in the 04–3220 action: Defendants DHR & Company's and Collectives, Inc.'s Motion to Strike, which motion [37] is also **DENIED**.

7. The Trade Dress and Patent actions were consolidated in the Northern District of California, but the Court assumes that defendants' motion

for dismissal is directed only at the Patent action, because defendants filed a motion for summary judgment only in the Patent action.

8. The same motion has been filed in the 04–3220 action, as Document # 38. For the same reasons, the Court **DENIES** this motion as well.

Inc.'s Motion for Sanctions and for Order to Show Cause [173].

### B. Defendants' Motion for Leave to Amend Answer to Verified "Trade Dress" Complaint and "Patent" Complaint [243]

■ Defendants have filed a motion in this Court to allow the defendants to amend their answer to (1) add an affirmative defense and (2) add to their counterclaim those claims raised in the Georgia state court action they filed. ([243].) Defendants argue that they only recently discovered the affirmative defense of advice of counsel, but then somewhat inconsistently argue that plaintiff has long been fully aware of it. As to the counterclaim, they argue that no additional witnesses or parties are necessary and the set of facts are the same in both the state court case and this case, so that the counterclaims should be added. Defendants state that they will dismiss the state court case, if they are permitted to amend their answer to bring in the claims from that case as counterclaims here. Defendants rely on Federal Rule of Civil Procedure 15 for this motion to amend.

Plaintiff opposes the motion and argues that, as the time set out in the scheduling order for amending pleadings expired prior to this motion, the governing rule is Rule 16. Plaintiff contends that defendants have not shown "good cause," as required by Rule 16. Plaintiff also argues that even were the Court to apply Rule 15, the motion should still be denied. The Court finds plaintiff's arguments to be persuasive.

Again, this motion appears to be another effort by defendants to gain a new chance to pursue certain litigation options that would have been time-barred had the case remained in the Northern District of California. Once more, this case was transferred ostensibly so that defendants would be able to compel the attendance of Georgia witnesses to a trial, not so that defendants could get a second chance to pursue litigation strategies that would be unavailable had the case stayed in California. The Court concurs with plaintiff that Rule 16(b) is the operative rule to apply here. In *Sosa v. Airprint Systems, Inc.*, 133 F.3d 1417, 1419 (11th Cir.

1998), the Eleventh Circuit held that where a party files a motion to amend after expiration of the date set out in the scheduling order for such a motion, the party must demonstrate good cause under Rule 16(b). To show good cause, a party must, as a prerequisite to further consideration of the motion, show diligence as to the matter that is the subject of the motion to amend. *Id.* at 1418.

Here, the Court concurs with the plaintiff that defendants have failed to show diligence with regard to their effort to amend their answer. The Scheduling Order entered in the Northern District of California set June 10, 2004 as the deadline for amending pleadings. Having apparently first filed this present motion to amend in this district, on January 25, 2005, defendants greatly missed the deadline set out in the Scheduling Order. Further, defendants have not shown diligence in their efforts to amend their answer. The purported advice of counsel that they allegedly received occurred between May and July of 2002, which predated the filing of the litigation by over a year. As plaintiff notes, an advice of counsel defense is a standard defense to allegations of willful infringement. Thus, defendants were well aware of whatever facts existed to support an advice of counsel defense and chose not to include that in their answer. This is not a case in which a defendant first realized during discovery that he had an affirmative defense because of some document the plaintiff produced.

In addition to an absence of diligence by defendants, an amendment of their answer would require a reopening of discovery that would greatly prejudice plaintiff, who has already had its November 2004 trial date greatly delayed as a result of defendants' transfer of the case to this district. On these facts, the Court concludes that defendants would likewise not meet the more lenient test set out by Rule 15. Accordingly, the Court denies defendants' motion to amend answer.

■ With regard to defendants' motion to add a counterclaim alleging a breach of contract, this counterclaim concerns events that occurred prior to defendants' termination as plaintiff's sales representatives and therefore

predate the pertinent events in this action alleging patent and trade dress infringement. The counterclaim appears to involve a claim of unpaid commissions in the amount of approximately $17,000. In other words, the facts giving rise to this counterclaim are not related to those giving rise to the federal claims. At present, this counterclaim is the subject of a state court action filed in Georgia by defendants against plaintiff.

As to the state court case, defendants emphasize judicial economy and contend that resolving all the disputes between them and the plaintiff in as few fora as possible is desirable. Yet, had that been defendants' wish, one would think that they might have made an effort to add this counterclaim while the case was in California. Further, adding this new counterclaim, which seeks a very small amount of damages, will require a reopening of discovery and will further delay litigation of federal claims that involve far more monetary damages and that have already been greatly delayed as a result of the transfer to this district.

Therefore, the Court **DENIES** defendants' Motion for Leave to Amend Answer to Verified "Trade Dress" Complaint and "Patent" Complaint [243].[9]

### C. Defendants DHR & Company's and Collectives, Inc.'s Motion for Summary Judgment or in the Alternative, Motion for Partial Summary Judgment [167]

While the case was still in the Northern District of California, the defendants filed a Motion for Summary Judgment or, in the Alternative, Partial Summary Judgment. Judge Otero did not rule on this motion prior to transferring the case and it has been docketed as Document # 167 in this litigation. Plaintiff responded to defendants' motion in the Northern District of California, and its response has been docketed as Document # 180 in this litigation. Defendants replied, which document is docketed as Document # 196.

At the outset, the Court notes its difficulty getting a handle on the precise issues before

it on the summary judgment motion, as the parties sometimes seem to be talking across each other about different issues. In their opening memorandum in support of the motion for summary judgment, defendants do not set out their claim constructions of the patents at issue. That presents a difficulty in examining their other arguments. Primarily, defendants contend that plaintiff's patents are not valid because the plaintiff failed to disclose material facts to the PTO at the time of application, because the jewelry boxes were sold more than one year prior to the time of application, and because the designs are obvious, rendering them unsuitable for patent protection.

Yet, validity of the patent, which is the primary thrust of defendants' motion for summary judgment, is typically a defense to infringement. Infringement analysis, therefore, should presumably come first, as it is only after there is a finding of infringement that such a defense would become relevant. Nevertheless, in the twenty-six page memorandum filed by defendants, only two paragraphs touch on infringement. These two paragraphs mention only the patent on the round box. Not addressing the infringement claims could be construed as either a concession by defendants that they have infringed the other two patents or an indication by them that there is a jury question on the issue of infringement. The Court is not sure which direction they are taking here, but assume that defendants are not conceding infringement.

With regard to the specifics of defendants' contention that plaintiff failed to disclose the existence of prior art—that is, similar jewelry boxes—to the PTO when obtaining the patents in question, claim construction by defendants is necessary to appraise defendants' arguments. Likewise, with regard to defendants' contention that plaintiff sold jewelry boxes that conformed to the patent designs more than one year before seeking a patent—which fact would apparently bar the ability to obtain a patent—again claim construction is necessary.

---

**9.** The Court **denies** the same motion, Document # 45, that was filed in the 04–3220 action.

In its responsive brief, plaintiff does offer its own claim construction of the patents. With regard to defendants' argument that plaintiff did not disclose to the PTO all jewelry boxes that were similar, plaintiff responds that it disclosed those boxes that were the most similar. According to plaintiff, disclosure of the jewelry boxes defendants have highlighted was not necessary because that evidence would have been cumulative. Again, claim construction is necessary here, as the only way to determine whether the boxes defendants have pointed to should have been disclosed to the PTO is to identify what it is about the patented boxes that is patented and then to determine whether the jewelry boxes plaintiff did disclose to the PTO are similar with respect to the patented features.

Plaintiff responds to the prior sales argument by claiming that the jewelry boxes sold more than one year prior to the patent applications were not the same boxes as those submitted for patents. Plaintiff notes that those boxes had different Wolf Style numbers than the patented boxes. Again, claim construction is needed here in order to determine whether the boxes previously sold are the same boxes, for purposes of patent analysis, as those created pursuant to the patents at issue here. In essence, how the claims are constructed will guide the inquiry as to whether the same boxes were sold more than one year prior to application. Finally, with regard to defendants' argument that plaintiff's design was obvious and hence not suitable for patent protection, plaintiff offers little response, other than to assert that the designs are novel.

In its Reply, defendants focus on its argument that the patent designs are obvious and reiterate their previous arguments concerning invalidity. Defendants continue not to offer their own explicit claim construction, other than what the reader can infer about that construction from reading defendants' reply memorandum.

Given the gaps in the parties' pleadings and the fact that they do seem, at many points, to be talking past each other, the Court finds itself unable to resolve the pending summary judgment motion. Accordingly, the Court **DENIES, without prejudice,** Defendants DHR & Company's and Collectives, Inc.'s Motion for Summary Judgment or in the Alternative, Motion for Partial Summary Judgment [167]. As noted *supra,* the Court will set out a new timetable for considering these legal challenges by defendants.

### D. Miscellaneous Motions Mooted by the Court's Ruling on Defendants' Motion for Summary Judgment

Several pending motions are now mooted by this Court's denial without prejudice of defendants' motion for summary judgment. These motions are: Plaintiff's Motion for Leave to File the Declaration of Katherine Baumann [181]; Defendants DHR & Company's and Collectives, Inc.'s Motion for Oral Argument [240]; Defendants' Motion to Supplement Brief in Support of Motion for Summary Judgment [242]; and Plaintiff's Motion for Leave to File Surreply to Defendants' Reply [256]. Each of these motions will be **DENIED AS MOOT.**

### E. Defendants' Application for Admission of Valerie Hanna Pro Hac Vice [227]

The above motion is **GRANTED.**

### F. Defendants' Motion to Consolidate Cases [223]

Defendants have filed a motion to consolidate cases and has noted that the two cases—the Trade Dress and the Patent Infringement cases—were consolidated in the Northern District of California. It may well be that this Court will try both cases together, at which time they would be consolidated. Yet, at the present time, the record before the Court is confusing and unwieldy to navigate. Specifically, the Court has numerous pleadings from the Northern District of California that are not docketed on this Court's docket,[10] but are nonetheless sitting here in a very large stack, has a separate Northern

---

10. The Northern District of California docket in the Trade Dress case, which includes 300 tabs, is very confusing. Some matters appear to have been handled by a magistrate judge; some by the district court judge, and some appear to have been ignored.

District of Georgia file for the Trade Dress case, and a separate Northern District of Georgia file for the Patent case. Were the Court to consolidate the cases now, the Clerk would face the daunting task of trying to merge these three records, with the inevitable duplication of document numbers and the like. Consolidation would cause a further drain on the Clerk's resources and likely create an even more confusing and unwieldy record.

Moreover, as no summary judgment motions appear to have been filed in the Trade Dress case and as discovery is also closed in that case, the Trade Dress case would appear ready to be tried; the Patent case is not ready. *See* discussion *supra.* The parties may wish to have a consolidated trial, but if there is a possibility that the Trade Dress case will be tried first, the Court will keep the cases separate.

Because the Court is not going to consolidate the cases at the present time, the parties should insure that any pleading that pertains to both cases should be filed in both cases. As most of the upcoming litigation would appear to be focused on the Patent case, the Court assumes that there will be little need of filing anything in the Trade Dress case in the near future, however. In short, the Court **DENIES WITHOUT PREJUDICE** Defendants' Motion to Consolidate Cases [223].

## IV. Patent Infringement Case: No. 1:04–CV–3220–JEC

The parties have filed some motions in this case that duplicate the motions filed in the 04–3256 case, which motions have been ruled on *supra.* To summarize, the Court **DENIES WITHOUT PREJUDICE** Defendants DHR & Company's and Collectives, Inc.'s Motion to Consolidate Cases [32]; **DENIES AS MOOT** Defendants DHR & Company's and Collectives, Inc.'s Motion for Oral Argu-

ment [42]; Defendants Motion to Supplement Brief [44]; and Plaintiff's Motion for Leave to File Surreply to Defendants' Reply [59]; AND **DENIES** Defendants DHR & Company's and Collectives, Inc.'s Motion to Strike [37]; Defendants DHR & Company's and Collectives, Inc.'s Motion to Dismiss for Want of Prosecution [38]; and Defendants' Motion for Leave to Amend Answers to Verified "Trade Dress" Complaint and "Patent" Complaint [45].

## V. Future Proceedings

### A. The Filing of Renewed Motions and Pleadings

As noted, no summary judgment motion was filed in the Trade Dress case; hence, that case appears ready for trial, subject only to the preparation a pretrial order. The Court, however, will temporarily defer preparation of that Pretrial Order.

With regard to the Patent Infringement action, the Court has denied without prejudice defendants' motion for summary judgment. As noted *supra,* the Court needs more precise briefing from each party as to its position on the issues. First, the Court needs to identify the Claims Construction of each party. Accordingly, the Court directs the parties, **within 30 days,** to simultaneously exchange with each other a Proposed Claim Construction for each patent. The parties shall use Patent L.R. 6.2, NDGa., as a guide.[11] Twenty days thereafter, or **fifty days** from today's date, the parties shall file a Joint Claim Construction Statement with the Court, using Patent L.R. 6.3, NDGa., as a guide.[12]

At the conclusion of this Joint Statement, the parties shall indicate their position as to whether a *Markman* hearing should be held or whether instead defendants could proceed directly to filing a motion for summary judgment as to the invalidity of the patent or as

---

**11.** The Court, however, does not intend to re-open discovery. Hence, while the parties should disclose a summary of each percipient or expert's anticipated testimony, the parties will not be permitted to designate new expert witnesses. Further, the Court is aware that these local rules regarding claim construction perhaps seem more focused on utility patents, as opposed to design

patents. Thus, to some extent, they might not be totally apt to this case.

**12.** Given the fact that discovery has concluded, the parties shall disregard the following part of Patent Rule 6.3(4): "in sufficient detail to permit a meaningful deposition of that expert." *See* n. 11 *supra.*

to other defenses that defendants intend to offer. Typically, in a case involving a utility patent, claim construction would occur before summary judgment motions were filed; a collapsed filing might be less desirable. Here, given the fact that a design patent has less "terms" to define, a collapsed process might make sense. The Court will consider the input of the parties.

## B. Possibility of a Special Master

The filings of patent cases in the Northern District of Georgia are increasing at a discernable rate, but the number of judges and the number of law clerks assigned to these judges are not. Each patent case typically requires a great expenditure of a judge's time and can greatly drain already limited resources. Further, district judges typically have not had enough technical or scientific experience or training to be considered anything but raw amateurs as to the particular technical question in dispute. The lack of training and experience among district judges can be contrasted with the presence of scientific and technical training and experience among the judges of the Federal Circuit, who represent an expert appellate panel who review all patent cases on appeal.

As a result, many judges in this Court and in other district courts have begun to routinely appoint special masters to handle all pretrial matters in patent cases. It is this Court's intention to follow that practice in all cases except those where it would clearly be of limited benefit. For that reason, the Court seeks the input of counsel as to the benefits of a special master here.

Beyond improving the efficiency of the proceeding and permitting a quicker resolution, the Court can also perceive a value from utilizing a special master in terms of the quality of the analysis For example, in a design patent case, the Court is uncertain how to implement the boiler plate standards to be used in determining whether a design is obvious, and hence not suitable for patent protection, or instead whether a design is novel. In determining whether a jewelry box design is novel, does one utilize the oft-quoted Potter Stewart subjective test: "I know it when I see it"? Does one define obviousness

broadly, utilizing the Shakespearean maxim to the effect that "a round jewelry box is a round jewelry box by any other name." A special master with experience in examining design questions could likely render a better-reasoned answer than could a person not similarly trained.

Accordingly, the Court also directs the parties to include their positions on the use of a Special Master when submitting the Joint Claim Construction Statement. Likewise, the parties should include a paragraph indicating the status of the conduct of the defendants. Specifically, have defendants ceased selling the offending products? Is there any possibility of a settlement of this action?

## C. Reference to Filings in the Northern District of California

This Court wishes to minimize its need to slog through the Northern District of California file. In the event that counsel have need to refer to document filings in the Northern District of California file, they should notify the clerk that a particular document should be made a part of this Court's record. The Clerk will then affix the next document number to be assigned to this document. To avoid needlessly tearing the Northern District of California record apart, counsel shall attach a copy of any such document to the notification or, if such a document is too voluminous to attach or if it contains original exhibits, counsel may appear in person at the Clerk's Office and locate the particular document in the California file, after which the Clerk will remove it from that file and docket it in this Court's file. Counsel should note that some filings in the Northern District of California have already received their own docket number in this Court.

## VI. CONCLUSION

In summary, regarding **Case No. 1:04–CV–3220–JEC**, the Court **DENIES without prejudice** Defendants DHR & Company's and Collectives, Inc.'s Motion to Consolidate Cases [32]; **DENIES as moot** Defendants DHR & Company's and Collectives, Inc.'s Motion for Oral Argument [42], Defendants

DHR & Company's and Collectives, Inc.'s Motion to Supplement Brief [44], and Plaintiff's Motion for Leave to File Surreply to Defendants' Reply [59]; AND **DENIES** Defendants DHR & Company's and Collectives, Inc.'s Motion to Strike [37]; Defendants DHR & Company's and Collectives, Inc.'s Motion to Dismiss for Want of Prosecution [38]; and Defendants' Motion for Leave to Amend Answers to Verified "Trade Dress" Complaint and "Patent" Complaint [45].

Regarding **Case No. 1:04–CV–3256–JEC,** the Court **DENIES** Defendants DHR & Company's and Collectives, Inc.'s Motion for Discovery and Motion for Reconsideration re Order from Other Court [193]; Defendants Motion to Strike Experts or in the Alternative to Dissolve Protective Order [235]; Defendants DHR & Company's and Collectives, Inc.'s Motion to Dismiss for Want of Prosecution [236]; Defendants DHR & Company's and Collectives, Inc.'s Motion for Sanctions and for Order to Show Case DHR & Company's and Collectives, Inc.'s Motion [173]; and Defendants' Motion for Leave to Amend Answer to Verified "Trade Dress" Complaint and "Patent" Complaint [243]; the Court **DENIES as moot** Plaintiff's Motion for Leave to File the Declaration of Katherine Baumann [181]; Defendants DHR & Company's and Collectives, Inc.'s Motion for Oral Argument [240]; Defendants' Motion to Supplement Brief in Support of Motion for Summary Judgment [242]; AND Plaintiff's Motion for Leave to File Surreply to Defendants' Reply [256]; the Court **GRANTS** Defendants' Application for Admission of Valerie Hanna Pro Hac Vice [227]; AND the Court **DENIES without prejudice** Defendants' Motion to Consolidate Cases [223], and Defendants DHR & Company's and Collectives, Inc.'s Motion for Summary Judgment or in the Alternative, Motion for Partial Summary Judgment [167].